UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| Dr. ARCHIE EARL | ) |
| | ) |
|         **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Case No. 2:13CV148 |
| | ) |
| NORFOLK STATE UNIVERSITY , ET AL | ) |
| | ) |
| | ) |
|         **Defendants,** | ) |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

The Defendants, Norfolk State University, The Board of Visitors of Norfolk State University, et al. (collectively, referred to herein as "NSU" or the "University")[1] and the Commonwealth of Virginia ("Commonwealth"), by the Attorney General of Virginia, hereby submit this Brief in Support of their Motion to Dismiss Plaintiff's Amended Complaint ("Am. C.") (ECF Doc. #12).

### I.    INTRODUCTION

Dr. Archie Earl ("Earl") is a professor at Norfolk State University. His Amended Complaint filed August 12, 2013 alleges discrimination against Earl and others in violation of the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (both status discrimination and retaliation), and the Age Discrimination in Employment Act ("ADEA"). Earl may eventually petition for class certification, and his Complaint seeks an

---

[1] Plaintiff has sued both "The Board of Visitors of Norfolk State University" and "Norfolk State University." These represent the same entity. The actual entity is "The Visitors of Norfolk State University." *See Virginia Code § 23-174.1.* This entity conducts business as Norfolk State University. *See Virginia Code § 23-174.2.*

injunction, the Court's declaration of violations, compensatory damages, reasonable attorney's fees, and costs.  *See* Am C. 7-8, Prayer for Relief .

For the reasons set forth below, Earl's claims of violation of the ADEA are not within the subject matter jurisdiction of this District Court, Federal Rules of Civil Procedure ("Rule") 12 (b) (1).  Earl's allegations of EPA and Title VII violations fail to state a cause of action for which relief may be granted, Rule 12(b)(6).  Earl's entire Amended Complaint should be dismissed.

## II. FACTUAL ALLEGATIONS IN THE AMENDED COMPLAINT

Earl is a 66 year old, black male Associate Professor at the Department of Mathematics at NSU.  Am. C. ¶ 1.  NSU is an institution for higher education and a University of the Commonwealth of Virginia.  Am. C. ¶ 2.  The Board of Visitors is the policy making body of NSU.  Am. C. ¶ 3.

In 2006 the NSU Faculty, through the Faculty Salary Issues Research Committee ("the Committee"), undertook a study in faculty[2] salaries.  Am. C. ¶ 9.  Reviewing a sampling of faculty salary data, the Committee and the Plaintiff Earl concluded that "recent hires, and white faculty, and younger faculty, and female faculty" received salaries as render Earl's salary "woefully inadequate" in comparison.  Am. C. ¶¶ 10-11.  "[I]nferential statistical analysis" led Earl to conclude that white faculty were paid more than black faculty, women paid more than men, and those under age 40 paid more than those over age 40.  Am. C. ¶¶ 13-15.

Older faculty, Earl asserts, also are at a disadvantage with respect to "NSU's new policy of post tenure review ("PTR").  Am. C. ¶ 15.  NSU's policy of post tenure review ("PTR") contains provisions permitting different performance review requirements, in terms of when PTR

---

[2]  The term faculty is used to mean "teaching faculty." Am. C. 2.

2

begins and how long a period it covers, applicable to older v. younger tenured faculty. Am. C. ¶ 15.

As a result of Dr. Earl's persistent criticism of NSU "for its uneven treatment of its faculty," and for his filing of EEOC charges on December 8, 2011, he alleges a variety of retaliatory acts:

> "(a) his most recent request for sabbatical leave was denied by NSU;
> (b) he was denied (all of 2011 and 2012) the right to present an oral report…at meetings of the Board of Visitors;
> (c) his reports were omitted (in March, December, 2011) from the BOV meeting handbook;
> (d) the University…demanded (10/26/2010) copies of all of Dr. Earl's emails pertaining to the most recent presidential search…;
> (e) the University disposed (Fall, 2011) of Faculty Senate office furniture, [etc.];
> (f) the president of the University...University Director of Human Resources, and the Board of Visitors refused…(9/6/2011, 7/3/2012) to meet with Dr. Earl; [and]
> (g) the Board attempted (January, 2010 through February, 2011) to induce the Provost to terminate Dr. Earl's contract with the University."

Am. C. ¶ 20.

In the Charge of Discrimination, No. 437-2012-00181, filed December 8, 2011, Earl reports that he is a Mathematics Professor in the College of Science, Engineering and Technology. He complains of pay discrimination based upon his race, sex, and age, with a further assertion that he did not receive "equal pay." See Exhibit 1, attached. The allegations rest upon a Faculty Senate Salary study. There is no mention in the Charge of the purportedly retaliatory events just described in the previous paragraph[3] nor was there investigation of sabbatical leave, oral reports, email searching, office furniture, refused meetings, or inducements to terminate Earl. The original Complaint filed with this District Court on March 21, 2013 alleges no retaliation.

---

[3] The EEOC file reveals that months later, after the filing of the Charge, Earl accused NSU of retaliation in terms of his salary and also retaliation in one aspect of his contract (appointment) dated June 23, 2012.

3

## III. ARGUMENT

### A. Standard of Review.

Rule 12(b)(1) "permits a party to move to dismiss an action for lack of subject matter jurisdiction." *Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 782 (E.D. Va. 2003). "The burden of establishing the existence of subject matter jurisdiction rests upon the party which seeks to invoke the court's authority." *Id.* (internal citations omitted).

For motions made pursuant to [Rule 12(b)(1)], "the evidentiary standard depends upon whether the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the factual allegations that support jurisdiction." *Id.* at 782-83 (internal quotation omitted). Specifically, "[i]f the defendant is attacking the sufficiency of the complaint, the court must accept all of the complaint's factual allegations as true." *Id.* at 783 (internal citations omitted). By contrast, "if the defendant claims that the jurisdictional facts alleged in the complaint are untrue, the pleadings are regarded as mere evidence. … The court then weighs the pleadings and all of the other evidence to determine whether subject matter jurisdiction exists." *Id.* at 783 (internal citations omitted).

Rule 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a Defendant's Motion to Dismiss, a complaint must contain sufficient facts regarding each count to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Generally, courts are limited to a review of the allegations contained in the complaint. However, a court "need not accept as true mere legal conclusions couched as factual allegations." *Assa'ad-Faltas v. Comm. of Va.,* 738 F. Supp. 982, 985 (E.D. Va. 1989) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In *Twombly*, the Supreme Court of the United States rejected the so-called "no set of facts" test that had long been

the standard for dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. 544. District courts now must examine the complaint to determine whether the plaintiff has alleged sufficient facts to make a particular cause of action "plausible." Specifically:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . , a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do….Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.

*Id*. at 555 (citation omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570); *see also Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (explaining that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusions.) This Circuit requires that a complaint allege sufficient *facts* establishing each of the *elements* of the claim. *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("facts sufficient to state elements of the claim"); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).

Non-judicial records outside the complaint of certain types may also be considered in determining a motion under Rule 12(b)(6). "[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint…not only documents quoted, relied upon, or incorporated by reference in the complaint, but also official public records pertinent to the plaintiffs' claims." *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995); *Witthohn v. Fed. Ins. Co.*, 164 Fed. Appx. 395, 396-97 (4th Cir. 2006); *Brooks v. Arthur,* 626 F.3d 194, 199, n. 6 (4th Cir. 2010).

**B.    This Court Lacks Subject Matter Jurisdiction Over Earl's Cause of Action for Age Discrimination Under the ADEA.**

The Eleventh Amendment[4] bars Commerce Clause (Art. 1, § 8 of the U.S. Constitution[5]) derived claims against the Commonwealth and its agencies and educational institutions, including NSU.[6]  Such protection extends to actions that would be filed under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA").  *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) (The ADEA's purported abrogation of the States' sovereign immunity is invalid).

Finding a lack of Congressional authority under Art. I, § 8, the Supreme Court examined in *Kimel* the ADEA under § 5 of the Fourteenth Amendment[7].  The Court determined that the ADEA was not appropriate legislation under § 5 of the Fourteenth Amendment.  Specifically, the Court held:

> in light of the indiscriminate scope of the Act's substantive requirements and the lack of evidence of widespread and unconstitutional age discrimination by the States, we hold that the ADEA is not a valid exercise of Congress' power under *§ 5 of the Fourteenth Amendment*.  The ADEA's purported abrogation of the States' sovereign immunity is accordingly invalid.

*See Kimel*, 528 U.S. at 91 (emphasis added).

The ultimate guarantee of the Eleventh Amendment, of sovereign immunity, is that non-waiving states not be sued by private individuals seeking money damages or other compensation (retrospective relief) in federal court.  "[N]either a State nor agencies acting under its control may be subject to suit in federal court," unless a waiver is demonstrated.  *Puerto Rico Aqueduct*

---

[4]  "The judicial power of the United States shall not be construed to extend to any suit…prosecuted against one of the United States by citizens."
[5]  "The Congress shall have power…to regulate commerce."
[6]  NSU is a state university.  *See Virginia Code §§ 23-174.1 and 174.2.*
[7]  The Congress shall have power to enforce, by appropriate legislation, the provisions of [the Fourteenth Amendment]."  Included in the Amendment is the right of each person to "the equal protection of the laws."

& Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993). The Commonwealth of Virginia has made no waiver. See Gordon v. James Madison Univ., 2013 U.S. Dist. LEXIS 73696, *2 (May 24, 2013). Earl's ADEA claims are barred by the Eleventh Amendment to the Constitution and therefore the District Court lacks subject matter jurisdiction.

Earl has argued, in an earlier Brief (ECF #10), that his lawsuit seeks only prospective relief, not retrospective damages, outside of the bar of the Eleventh Amendment. Nevertheless, there appears a statement in prayer I ("eye") of the Amended Complaint that Earl is seeking "[c]ompensatory damages to Plaintiff in the amount of $100,000…under the ADEA." This prayer for damages should be stricken given Earl's concession.

The Supreme Court provided, in the doctrine set forth in *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), a narrow avenue for redress by permitting prospective relief for an ongoing violation of federal law. However, the private litigant, such as Earl, must bring his injunctive or declaratory claim against the proper state official capable of granting the relief sought. *Hope Lee-Thomas v. Prince George's County Pub. Sch.*, 666 F.3d 244, 249 (4th Cir. 2012); *Haley v. Commonwealth of Virginia Dep't of Health*, 2012 U.S. Dist. LEXIS 161728, *18 (W.D. Va. November 13, 2012). The Amended Complaint fails to meet the requirements of *Ex Parte Young*.

C.  **Earl Fails to State A Cause of Action for Salary Discrimination under the EPA.**

Congress provided in the EPA a protection against unequal wages paid to "employees of the opposite sex…for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working condition." 29 U.S.C. § 206 (d) (1); 29 CFR § 1620.15-.18. Hence, "[t]o establish a prima facie case of sex discrimination under the EPA, a plaintiff must prove: (1) that [his] employer has paid different wages to

7

employees of the opposite sexes; (2) that the employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." *Maron v. Virginia Polytechnic Inst.*, 2013 U.S. App. LEXIS 2333, *13 (4th Cir. January 31, 2013); *citing Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). Plaintiff need show "lower pay than a [fe]male co-employee for performing work substantially equal in skill, effort, and responsibility under similar working conditions." *See Strag v. Bd. of Trustees,* 55 F.3d 943, 948 (4th Cir. 1995). "When Congress enacted the Equal Pay Act, it substituted the word 'equal' for 'comparable' to show that jobs involved should be **virtually identical**, that is, they would be very much alike or closely related to each other." *Jacobs v. College of William and Mary*, 517 F. Supp. 791, 798 (E.D. Va. 1980) (emphasis supplied), *quoting Brennan v. City Stores, Inc.*, 479 F.2d 235 (5th Cir. 1973). The District Court set aside a jury verdict grounded in Plaintiff's contention that her position as Director of Women's Intramurals, Women's Varsity Basketball Coach, and bowling instructor, was equal to the work of the Men's Basketball Coach and the Men's Baseball Coach. *Jacobs*, 517 F. Supp. at 796. *See also Soble v. Univ. of Maryland*, 778 F.2d 164, 167 (4th Cir. 1985) (differences in educational backgrounds and requirements of distinctive skills in university departments could make salary comparison improper).

The importance of a specific opposite sex comparator should not be understated. In *Houck v. Virginia Polytechnic Inst.*, 10 F.3d 204, 205 (4th Cir. 1993), Professor Cherry K. Houck sued Va. Tech claiming she was underpaid as a Professor in the College of Education's Curriculum and Instruction Division. She testified that unspecified males performed jobs of equal skill, effort and responsibility and her expert witness testified of his analysis showing lower salary adjustments for Dr. Houck when compared to males in her division. *Houck*, at 205-06. She received, on average, smaller raises than males. *Houck*, at 206. However, Houck

8

failed to identify any specific male comparator and made no concrete comparison. *Id.* The District Court noted,

> She did not compare teaching loads other than to state that her load was low and that other faculty members taught more students. She did not reveal whether her hypothetical comparisons taught on an academic or calendar year basis [or] compare her research to anyone else's research or compare her level of service to that of other faculty members.

*Id.* Her expert did not identify a relevant comparator or compare Houck with specific males having similar jobs or levels of performance. *Id.* The Fourth Circuit affirmed the District Court's dismissal of the case "because [Houck] did not establish a *prima facie* case."

A pay equity study, which offers statistical evidence of male and female teaching faculty employees, does not alone provide evidence to prove a prima facie case under the EPA. *See Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 701-02 (7th Cir. 2003). Dr. Deborah Cullen sued Indiana University alleging EPA violations showing that she, as Director of the Respiratory Therapy Program, was paid about half the salary of Dr. Sandy Quillen, the male Program Director for Physical Therapy. *Cullen*, at 696. The Seventh Circuit found that although the common core of the positions suggested equality, they were not; "[t]he EPA specifies three separate elements that are to be considered in comparing job duties: skill, effort and responsibility. Each of these elements must be met individually to establish a prima facie case." *Cullen*, at 699 (omitting internal citation.) A comparison of the positions failed and the Seventh Circuit determined the statistical evidence of pay disparity would not substitute. *Cullen*, at 701-02.

Earl's 2006 salary study--the core factual assertion of sexual inequity in pay--does not provide facts sufficient to support a *prima facie* violation of the EPA. Not all teaching faculty members have the same job requirements or responsibility; some require extensive research,

9

committee service, public relations, grant acquisitions, and teaching skills vary. *See Soble*, 778 F.2d at 167. Different disciplines may have varying requirements for intellectual study, service, and publication. Efforts to keep current in the technologies and sciences likely exceed the efforts required in the humanities. Earl has told the EEOC that he is a Mathematics Professor. The Amended Complaint offers no virtually identical Mathematics positions that are paid differently because of the incumbent's sex.

D.  **Earl Fails to State A Cause for Salary Discrimination in Violation of Title VII.**

The plaintiff suing under Title VII bears the initial burden of establishing a **prima facie** case[8] by producing evidence that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was performing satisfactorily at the time of his adverse employment action, and (4) the adverse employment action occurred "under circumstances which give rise to an inference of unlawful discrimination." *Miles v. Dell, Inc.*, 429 F.3d 480, 487 (4th Cir. 2005) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). For salary discrimination, a male and black plaintiff must show that the job he occupied was substantially similar to a higher paying job performed by a female and/or white professor. Under the disparate treatment model of a Title VII action, a plaintiff retains the ultimate burden of proving intent to discriminate on the basis of sex or race. *Brinkley-Obu v. Hughes Training, Incorporated*, 36 F.3d 336, 345 (4th Cir. 1994).

Title VII requires examination of the job duties of the compared male and female (or the compared white and black employee). Statistics showing pay differentials that lump together a number of job categories or fail to account for non-discriminatory factors such as experience or

---

[8] The Amended Complaint does not rely upon direct evidence of discrimination because of race or sex.

length of service, may be rejected as not sufficiently probative. *Payne v. Travenol Labs, Inc.*, 673 F.2d 798, 817 (5th Cir. 1982).

Even where the standards for similarity between the male and the female-occupied (black and white-occupied) jobs might be relaxed (when compared to EPA standards),[9] plaintiff also carries the burden of explaining employer practices that discriminate on the basis of gender or race. *Miranda v. B&B Case Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992).[10] Earl's salary study, while alleged to have revealed inequities, makes no accusation of intentional discrimination. There are no facts from which the Court could infer discriminatory motives in the pay variance described.

Both because of the lack of evidence of job similarity, between protected and non-protected employees, and because of the lack of specific allegations of discrimination, Earl's Title VII cause of action fails.

**E. The Amended Complaint Fails to State A Cause for Retaliation Under Title VII.**

A plaintiff prevails on his theory of retaliatory discrimination only if he can demonstrate that (1) he engaged in protected activity; (2) employer took a materially adverse action against him (one that might have dissuaded a reasonable worker in his position from engaging in protected activity); and (3) a causal connection exists between the protected activity and the asserted adverse action. *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006); *Coleman v. Md. Court of* Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

**1. The Necessity of A Material Adversity**

Title VII only protects employees from "retaliation that produces an injury or harm" and does not serve to shield employees from "trivial harms," "petty slights," "minor annoyances,"

---

[9] *Washington v. Gunther*, 452 U.S. 161, 179 (1981).
[10] Cited by the Fourth Circuit in *Brinkley-Obu*, 36 F.3d at 343.

"the ordinary tribulations of the workplace," or "simple lack of good manners." *Burlington N.*, 548 U.S. at 68. Material adversity has financial consequences for the employee, affecting wages or other significant benefits of employment. *See Shannon v. Va. Dep't of Juvenile Justice*, 2007 U.S. Dist. LEXIS 25170 at *4 (E.D. Va. Apr. 4, 2007) (unpubl.), *aff'd* 258 Fed. Appx. 583 (4th Cir. 2007) (employee's transfer not materially adverse because it did not affect salary or benefits). *See Wiley v. Glassman*, 511 F.3d 151 (D.C. Cir. 2007) (reduction of broadcaster's airtime did not affect his compensation, position, or opportunity for promotion); *Vaughn v. Louisville*, 302 Fed. Appx. 337, 348 (6th Cir. November 24, 2008) (unpubl.) (negative performance evaluation not affecting salary); *Cain v. Green*, 261 Fed. Appx. 215, 217 (11th Cir. January 7, 2008) (unpubl.) (lower performance rating.) Delays in meeting an employee's requests, or other inconveniences, are not of such significant harm as to be actionable. *Carmona-Rivera v. Puerto Rico*, 464 F.3d 14 (1st Cir. 2006). Oversight or supervision is not materially adverse to the employee. *Mason v. City of Chicago*, 436 F. Supp. 2d 946 (N. D. Ill. 2006). *See also Fercello v. County of Ramsey*, 612 F.3d 1069, 1076-81 (8th Cir. 2010) (loss of a parking spot, the requirement of a daily log, exclusion from a certain work team, and unwelcome feelings at meetings are not material adversity under Title VII.) Generally, a "materially adverse" action must be of *direct* consequence to the plaintiff's benefits of employment. *Recio v. Creighton Univ.*, 521 F.3d 934 (8th Cir. 2008).

All seven of the allegations made by Earl fail the test of "material adversity."

**2. The Causation Requirement**

The materially adverse action must have occurred *because* of the protected activity. *University of Texas Southwestern Medical Center v. Nassar,* 133 S. Ct. 2517, 2534 (2013). In *Nassar*, the Supreme Court held that "but-for" not the lessened "motivating factor" causation test

is applicable to Title VII retaliation claims. *Same, Gibson v. Old Town Trolley Tours,* 160 F.3d 177, 180 (4th Cir. 1998); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). Civil rights activity must precede in time the purported retaliation.

NSU did not consider the alleged request from Dr. Earl for Sabbatical leave at any time *after* his protected activity: note the lack of a specific allegation of the time this request occurred in the lawsuit. Occurrences including the omission of Earl's reports to the Board of Visitors, the demand for Dr. Earl's email, the disposal of furniture, etc., and the alleged attempts to induce the Provost to terminate his contract, all pre-dating December 8, 2011, do not give rise to timely retaliation claims because of the causation requirement.

3. **Required Exhaustion of Administrative Remedies**

Employees must attempt conciliation through the EEOC before presenting their claims in the federal courts.

> Congress enacted Title VII's exhaustion requirement with several goals in mind….First, an administrative charge notifies the employer of the alleged discrimination….Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved….Congress, through Title VII, wanted to end discrimination…not [at] the 'ponderous pace' of formal litigation [but by employing the] arsenal of resources," as are available to the EEOC.

*Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005) (internal citations omitted). For a claim arising in Virginia, which has a statewide human rights "deferral agency,[11]" the employee must present his Charge to the EEOC within 300 days of the act of discrimination or retaliation. 42 U.S.C. § 2000e-5 (e) (1). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *AMTRAK v. Morgan*, 536 U.S. 101, 113 (2002). *Also Malghan v. Evans*, 118 Fed. Appx. 731, 734, 2004 U.S. App. LEXIS 26681 *9 (4th Cir. 2004) (Non-selection

---

[11] The Virginia Council on Human Rights ("VCHR"), where Earl's December 8, 2011 Charge was filed.

and constructive discharge not part of hostile work environment claims but were "discrete" actions; *Morgan* dictates each requires exhaustion of employee's administrative remedy).

A limited exception to the requirement of exhaustion of administrative remedies is found in *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992). Margaret Nealon was a civilian employee of the U.S. Army who filed a pay discrimination charge, under both the EPA and Title VII, on August 16, 1985, against her employer. *Nealon*, at 586-87. The EEOC investigated, first considering the evidence provided "reasonable cause" to believe the Army was in violation. However, the EEOC later reconsidered. *Nealon*, at 587. Nealon then sued in this District Court and included in her lawsuit allegations of retaliation under Title VII. *Id.*

The District Court considered the retaliation charge barred and dismissed it because retaliation had not been included in the pay discrimination charge and not investigated by the EEOC. However, the Fourth Circuit reversed and sided with Nealon. The Court's opinion cited and followed the guideline set by the Seventh Circuit in *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989). A retaliation claim will be deemed *included* in the earlier EEOC charge if "**like or reasonably related to…and growing out of such allegations**," made in the earlier charge. *Id.* (emphasis added).

The Fourth Circuit panel in *Jones v. Calvert Group*, 551 F.3d 297 (4th Cir. 2009) had the opportunity to examine the appropriate use of the principles of *Nealon*.

> The critical question…is whether Jones's retaliation claim relates back to the charge that is properly before us, the second charge….Jones's second charge alleged a pattern of conduct by her employer in retaliation for her filing the first charge that included denying her mentoring opportunities, unduly scrutinizing her performance, and giving her a negative performance review. The charge also indicated that the retaliatory behavior was ongoing.

*Jones*, at 304. Under such circumstances, the retaliation claim did relate back.

Later in *Mezu v. Morgan State University*, 367 Fed. Appx. 385 (4th Cir. 2010) (*per curiam*) (unpubl.), the Court considered the discrimination action brought by Dr. Rose Mezu, an African-American woman of Nigerian origin. *Mezu*, at 386-387. In 2002, Dr. Mezu filed a first charge of discrimination, alleging non-promotion, then advanced the matter to the District Court, only to see it dismissed. *Mezu,* at 387. On March 25, 2007, after more problems she attributed to discrimination, Dr. Mezu again complained to the EEOC that she was not promoted due to consideration of her race and national origin. *Id.* She later received the right to sue May 30, 2008 and filed a lawsuit alleging employment discrimination in the failure to promote based on race and national origin, EPA violations, and retaliation for her engagement in protected EEOC activity. *Id.* The retaliation counts alleged that 1) in reaction to her 2002 Charge, Defendant issued negative performance recommendations, denied a promotion to full professor, and failed to complete the promotion review process; and 2) after her 2007 Charge, Morgan State's failed to complete the promotion review process and reassigning her classroom and office. *Id.*

The Fourth Circuit made the following analysis and decision:

> [T]he district court correctly determined that Mezu's retaliation claims do not satisfy the **narrow exemption from timeliness and exhaustion of administrative remedies.** Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC. However, a Title VII plaintiff may raise a retaliation claim for the first time in federal court without exhausting her administrative remedies if the discrimination complained of is **like or related to allegations contained in the charge and growing out of such allegations** during the pendency of the case before the Commission.
>
> We find Mezu had no claims properly before the court to which she could attach her retaliation claims. Therefore, Mezu is not relieved of the timeliness and exhaustion requirements. The district court thus did not err in dismissing Mezu's retaliation claims.

*Mezu*, at 389 (internal citations and quotations omitted, emphasis added).

The facts in Earl's dispute with NSU are quite the opposite of those in *Jones*, while the result in *Mezu* should control. Earl's 2011 pay discrimination Charge, intended to support a class of faculty members, is quite unlike the new retaliation allegations - Earl's denial of sabbatical, exclusion from Board meetings, disposal of property, threat to his tenure - affecting him uniquely. No facts Earl set forth in December 2011 to the VCHR (or the EEOC) would prompt an investigator to explore the retaliatory events as they appear in the Amended Complaint. The retaliation complaint does not reasonably relate back to the Charge of December 8, 2011.

**4.   The Statute of Limitations Also Bars the Retaliation Claims**

The time to file a Charge with the EECO or a deferral agency runs from the time the retaliatory or discriminatory act occurs and each "discrete act" must be separately preserved by timely presentation. *Mezu*, at 388, citing *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 621 (2007) and *Morgan*, 536 U.S. at 114. Should Earl file a new Charge of discrimination with the EEOC alleging the retaliatory acts, most if not all, would appear to be barred by time.

### IV.     CONCLUSION

WHEREFORE, the Defendants respectfully request this Court to dismiss the Complaint with prejudice or grant such other relief deemed appropriate.     Further amendments would appear to be futile.

Respectfully submitted,

**NORFOLK STATE UNIVERSITY,**
**and**
**THE BOARD OF VISITORS OF**
**NORFOLK STATE UNIVERSITY, et. al.,**
**and**
**THE COMMONWEALTH OF VIRGINIA**

By: _____/s/_____
Sydney E. Rab, Senior Assistant Attorney General

Kenneth T. Cuccinelli, II
Attorney General of Virginia

Wesley G. Russell, Jr.
Deputy Attorney General

Pamela Boston (VSB No.: 16730)
General Counsel for the Norfolk State University and
Assistant Attorney General
700 Park Ave, Room 540
Norfolk, VA 23504
Phone: 757-823-2294
Fax:  757-823-2288
pfboston@nsu.edu

Sydney E. Rab* (VSB No.: 15105)
Senior Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone: 804-786-1109
Fax: 804-371-2087
srab@oag.state.va.us
***Counsel of Record for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 27th day of August, 2013, the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

> Guy T. Hogan, Esq.
> VSB 36832
> 47 West Queens Way, Suite D
> Hampton, VA 23669
> Tel: 757-726-2800
> Fax: 757-726-0822
> Email: guyhogan@cox.net
> **Counsel for Plaintiff**

By: _____/s/_____

Sydney E. Rab* (VSB No.: 15105)
Senior Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone: 804-786-1109
Fax: 804-371-2087
srab@oag.state.va.us
Counsel for Defendants