**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

DR. ARCHIE EARL,

      Plaintiff,

v.                                  Civil No.: 2:13cv148

NORFOLK STATE UNIVERSITY,
THE BOARD OF VISITORS OF
NORFOLK STATE UNIVERSITY, and
THE COMMONWEALTH OF VIRGINIA,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on the motion to dismiss filed by Norfolk State University, the Board of Visitors of Norfolk State University, and the Commonwealth of Virginia (collectively "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL HISTORY[1]

Dr. Archie Earl ("Plaintiff") is a "66 year old, Black, male Associate Professor in the Department of Mathematics at Norfolk State University" ("NSU").  Pl.'s Am. Compl. ¶ 1.[2]  NSU "is a state supported" university located in "the Commonwealth of Virginia."  Id. ¶ 2.  Plaintiff also serves as "Chair of the NSU Faculty Salary Issues Research Committee" ("the Committee").  Id. ¶ 1.   In 2006, the Committee began to study "gross inequities in faculty salaries."  Id. ¶ 9.  The Committee, having discovered errors in data provided to the Committee by NSU's Human Resources Office, conducted a study of "sample data" consisting of "departmental data" accessible by "Committee members."  Id. ¶¶ 9-10.  During "the Committee's ongoing analysis," Plaintiff claims he discovered that, "with respect to recent hires, and white faculty, and younger faculty, and female faculty," Plaintiff's salary was "woefully inadequate," even

---

[1] The facts recited here are drawn from the Complaint and are assumed true for the purpose of deciding the motion currently before the Court.  They are not to be considered factual findings for any purpose other than consideration of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (observing that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint"); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

[2] Plaintiff originally filed his Complaint on March 21, 2013, ECF No. 1, but filed an Amended Complaint on August 12, 2013, ECF No. 12. Thus, the Court recites the facts alleged in Plaintiff's Amended Complaint.

though Plaintiff "was at least as qualified" and "the responsibilities of the job were essentially equivalent." Id. ¶ 11.

When Plaintiff's "attempts at discussions with the administration" failed, he began "grievance proceedings" with the Equal Employment Opportunities Commission ("EEOC") and the Virginia Council on Human Rights, "alleging discrimination on the basis of race, gender, and age." Id. Plaintiff filed a charge of discrimination with the EEOC "on December 8, 2011" and the EEOC "issued a right-to-sue letter to Plaintiff on December 21, 2012." Id. Plaintiff alleges that his "decision to file an EEOC complaint . . . triggered a wave of retaliatory acts that created a hostile and intimidating environment within which he was forced to operate." Id. ¶ 20. Plaintiff's Amended Complaint lists the following "retaliatory acts" by Defendants:

- Denial of Plaintiff's "most recent request for sabbatical leave;"

- Denial of Plaintiff's "right to present an oral report, as Faculty Senate president, at meetings of the Board of Visitors" ("BOV") in 2011 and 2012;

- Omission of Plaintiff's "reports to the Board of Visitors . . . from the BOV meeting handbook" in March and December, 2011;

- Demand for copies of Plaintiff's "emails pertaining to the most recent presidential search" on October 26, 2010;

- Disposal of Faculty Senate property in Fall 2011 and blaming Plaintiff for failing to obtain "proper authorization;"

- Refusal to meet with Plaintiff or "respond to his communications" on September 6, 2011 and July 3, 2012; and

- Attempts "to induce the Provost to terminate [Plaintiff's] contract with [NSU]" from January 2010 through February 2011.

Id. ¶ 20. Plaintiff alleges that Defendants' "actions had the effect of subjecting the Plaintiff to public embarrassment, feelings of insecurity in his job, public ridicule, [and] belittlement." Id. Furthermore, Plaintiff contends that he was forced "to operate in an environment that was hostile and permeated with discriminatory intimidation, and insult that was sufficiently severe as to alter the conditions of his employment, creating an abusive working environment." Id.

On March 21, 2013, Plaintiff filed a Complaint in this Court, "individually, and as a class action, with respect to the Title VII claims," alleging violations by Defendants of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Equal Pay

Act ("EPA"), and the Age Discrimination in Employment Act ("ADEA").  ECF No. 1.  Defendants filed a Motion to Dismiss on July 22, 2013.  ECF No. 4.  Plaintiff filed an Amended Complaint on August 12, 2013, adding a claim of retaliation.  ECF No. 12. In his Amended Complaint, Plaintiff contends that "inferential statistical analyses" show "a pattern or practice of discrimination [by NSU], based on race . . . in violation of Title VII."  Id. ¶ 13.  Plaintiff further alleges that "similar statistical analyses" revealed that NSU "was impermissibly discriminating against men, and in favor of women, . . . in violation of the [EPA]."  Id. ¶ 14.  Plaintiff also alleges that NSU "discriminat[ed] against its aged (over 40) faculty" in violation of the ADEA, both "in terms of salary" and with respect to its "new policy of post tenure review," which "has a discriminatory impact on older faculty."  Id. ¶ 15.  Finally, Plaintiff's Amended Complaint alleges that Plaintiff endured "retaliation by the Defendants for having led in the fight against salary inequities, for having been a vocal and persistent critic of the NSU administration for its uneven treatment of its faculty, and for his having filed charges of discrimination with the . . . EEOC."  Id. ¶ 20.  Defendants filed a second Motion to Dismiss on August 27, 2013.  ECF No.

13. Defendants' second Motion to Dismiss has been fully briefed and is therefore ripe for review.[3]

## II. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction – Rule 12(b)(1)

A party may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). The party asserting jurisdiction "has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). When considering a motion to dismiss pursuant to Rule 12(b)(1), a court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (internal citation omitted). When "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law," the moving party's motion to dismiss should be granted. Id. (internal citation omitted).

### B. Failure to State a Claim – Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss

---

[3] Plaintiff's filing of his Amended Complaint mooted Defendants' first Motion to Dismiss, ECF No. 4. Thus, the Court considers only Defendants' second Motion to Dismiss, ECF No. 13.

pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (omission in original). The United States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on its face" and thereby "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570 (internal citations omitted). The plausibility requirement is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting

E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, "'Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'" Twombly, 550 U.S. at 555 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)) (omission in original). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Although the truth of the facts alleged in a complaint is assumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd., 213 F.3d 175, 180 (4th Cir. 2000). In ruling on a 12(b)(6) motion, a district court "may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Volunteer Fire Dep't, 684 F.3d at 467 (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

In employment discrimination cases, the Supreme Court has held that a complaint need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth . . . in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973)." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 (2002). The Court explained that the "prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Id. at 510. The Fourth Circuit "has not, however, interpreted Swierkiewicz as removing the burden of a plaintiff to allege facts sufficient to state all the elements of [his] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Thus, although a complaint need not contain "detailed factual allegations," a complaint containing mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

### III. DISCUSSION

Defendants argue that Plaintiff's "entire Amended Complaint should be dismissed" because his ADEA claims "are not within the subject matter jurisdiction of this District Court" and because his EPA and Title VII claims "fail to state a cause of action for which relief may be granted." Defs.' Br. at 2, ECF No. 14. Having reviewed the relevant legal standards, the Court will consider each cause of action in turn.

### A. ADEA Claim

Plaintiff's Amended Complaint alleges that Defendants violated the ADEA by treating older faculty "unequally in terms of salaries" and NSU's "Post Tenure Review policy." Pl.'s Am.

9

Compl. ¶ 19, ECF No. 12. Defendants respond that Plaintiff's "ADEA claims are barred by the Eleventh Amendment" because Plaintiff failed to "bring his injunctive and declaratory claim against the proper state official." Defs.' Br. at 7, ECF No. 14.

### 1. Sovereign Immunity

It is well-established "that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 726 (2004) (citing Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669-70 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890)). "The States' immunity also extends to 'state agents and state instrumentalities.'" Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248 (4th Cir. 2012) (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)).

"'The Eleventh Amendment bar to suit is not absolute,' however." Id. (quoting Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990)). Congress may abrogate a state's Eleventh Amendment immunity "'by making its intention unmistakably clear in the language of the statute,'" Dellmuth v. Muth, 491 U.S.

223, 228 (1989) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 242 (1985)). In addition, "'the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law.'" Lee-Thomas, 666 F.3d at 249 (quoting Frew v. Hawkins, 540 U.S. 431, 437 (2004)). Finally, a state may waive its own immunity by "voluntar[ily] invok[ing] Federal jurisdiction" or by making "a clear declaration of submission to Federal jurisdiction." Amaram v. Va. State Univ., No. 3:06-CV-444, 2006 U.S. Dist. LEXIS 101246, at *2 (E.D. Va. Sept. 14, 2006) (citing Gunter v. Atl. Coast Line R. Co., 200 U.S. 273 (1906); Great N. Life Ins. Co. v. Read, 322 U.S. 47 (1944)).

Here, Plaintiff does not argue that Defendants are not "'state agents [or] state instrumentalities.'" Lee-Thomas, 666 F.3d at 248 (quoting Doe, 519 U.S. at 429). Nor does he assert that the Commonwealth's Eleventh Amendment immunity has been abrogated by the ADEA or waived by Defendants. Indeed, Plaintiff acknowledges that "Kimel bars any action by him for money damages or any kind of retrospective compensation against the Commonwealth of Virginia." Pl.'s Br. in Opp. at 5, ECF No. 17; cf. Raygor v. Regents of the Univ. of Minn., 534 U.S. 533, 537 (2002) (noting that "Kimel held that the 'ADEA does not validly abrogate the States' sovereign immunity'" (quoting Kimel, 528 U.S. at 91-92)). Rather, Plaintiff asserts that he

11

requests only "prospective injunctive and declaratory relief" regarding his ADEA claim and seeks leave of Court, pursuant to Federal Rule of Civil Procedure 15(a), to amend his Amended Complaint to "insert the name of the University President, in his individual capacity, as a proper Defendant." Pl.'s Br. in Opp. at 4, 5-6, ECF No. 17. Because the Eleventh Amendment bars the Court from considering Plaintiff's ADEA claims as they are currently alleged, Plaintiff's ADEA claims are **DISMISSED WITHOUT PREJUDICE.**

### 2. Leave of Court to Amend – Rule 15(a)

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party who has already amended his complaint "once as a matter of course" must obtain "the opposing party's written consent or the court's leave" in order to amend the complaint again. Fed. R. Civ. P. 15(a). "The court should freely give leave when justice so requires," id., and should not "avoid decisions on the merits on the basis of mere technicalities of pleading," Burns v. AAF-McQuay, Inc., 980 F. Supp. 175, 177 (W.D. Va. 1997), aff'd, 166 F.3d 292 (4th Cir. 1999). To be sure, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis, 371 U.S. 178, 182 (1962). A motion to amend may be denied "if the court finds 'any apparent or

declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of amendment, [or] futility of the amendment.'" Burns, 980 F. Supp. at 177 (quoting Foman, 371 U.S. at 182; Ward Elecs. Serv., Inc. v. First Com. Bank, 819 F.2d 496, 497 (4th Cir. 1987)). However, "[d]elay alone is an insufficient reason to deny leave to amend." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (citing Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). "Rather, the delay must be accompanied by prejudice, bad faith, or futility." Id.

Defendants argue that Plaintiff should not be allowed to amend his Amended Complaint "to add a new defendant" because Defendants' sovereign immunity as an agency of the Commonwealth of Virginia "has been settled law for more than a dozen years," long before Plaintiff filed his lawsuit, "about six months ago." Defs.' Br. at 5, ECF No. 19. However, Defendants do not assert any prejudice or bad faith regarding Plaintiff's delay in naming the proper defendant in his Amended Complaint, or that Plaintiff's ADEA claim, if brought against the proper defendant, would not survive a motion to dismiss. Accordingly, finding no evidence of "prejudice, bad faith, or futility," Edwards, 178 F.3d at 242 (citation omitted), the Court **GRANTS** Plaintiff's request for leave to amend his Amended Complaint for the

13

"purpose of inserting the President of Norfolk State University, in his individual capacity, as a Defendant," Pl.'s Br. in Opp. at 8, ECF No. 17.

### B. EPA Claim

Plaintiff's Amended Complaint alleges that "statistical analyses" of "sample data from departments within the University community" show that Defendants "impermissibly discriminat[ed] against men, and in favor of women, of comparable qualifications and responsibilities, and skill in salary assignments," in violation of the EPA.  Pl.'s Am. Compl. ¶¶ 10, 14, ECF No. 12. Defendants argue that Plaintiff's EPA claim should be dismissed because Plaintiff's "salary study – the core factual assertion of sexual inequity in pay – does not provide facts sufficient to support a prima facie violation of the EPA." Defs.' Br. at 14, ECF No. 14.  Specifically, Defendants contend that Plaintiff's Amended Complaint fails to compare "male and females doing 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Def.'s Reply Br. at 5, ECF No. 19 (quoting 29 U.S.C. § 206(d)(1)).

To establish a prima facie case of wage discrimination under the EPA, a plaintiff must show: "(1) that [his] employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort,

14

and responsibility; and (3) that such jobs are performed under similar working conditions." Brinkley v. Harbour Rec. Club, 180 F.3d 598, 613 (4th Cir. 1999) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)). "Job descriptions and titles, however, are not decisive. Actual job requirements and performance are controlling." Brennan v. Prince William Hosp. Corp., 503 F.2d 282, 288 (4th Cir. 1974). Therefore, "the burden falls on the plaintiff to show that the skill, effort and responsibility required in [his] job performance are [substantially] equal to those of a higher-paid [fe]male employee." Wheatley v. Wicomico Cnty., 390 F.3d 328, 332 (4th Cir. 2004) (citing Corning Glass Works, 417 U.S. at 195).

## 1. Wage Difference between Sexes

Plaintiff's Amended Complaint asserts that Plaintiff is a "male Associate Professor in the Department of Mathematics at Norfolk State University." Pl.'s Am. Compl. ¶ 1, ECF No. 12. Plaintiff alleges that he discovered that "his salary was woefully inadequate," compared to the salaries of "female faculty." Id. ¶ 11. Although Plaintiff's Amended Complaint lacks specifics regarding the differences in salary, the Court finds that, at least at this stage of litigation, Plaintiff's Amended Complaint sufficiently alleges "that [his] employer has paid different wages to employees of opposite sexes." Brinkley, 180 F.3d at 613.

## 2. Equal Skill, Effort, and Responsibility under Similar Working Conditions

Plaintiff alleges in his Amended Complaint that "he was at least as qualified" as higher-paid "female faculty" and that "the responsibilities of the job were essentially equivalent." Pl.'s Am. Compl. ¶ 11, ECF No. 12.  He further contends that Defendants were "in violation of the Equal Pay Act" because they were "impermissibly discriminating against men, and in favor of women, of comparable qualifications and responsibilities, and skill."  Id. ¶ 14.  However, Plaintiff asserts no facts in support of his allegations and his "formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Although Plaintiff asserts that "he was at least as qualified" as the female faculty earning the higher salaries, and that "the responsibilities of the job[s] were essentially equivalent," id. ¶ 7, he "has made no reference to the skills, effort, and responsibilities required of [him] as an 'Associate Professor' or to those of the [fe]male [faculty] who [Plaintiff] alleges receive a greater salary," Noel-Batiste v. Va. State Univ., No. 3:12cv00826, 2013 U.S. Dist. LEXIS 16875, at *17 (E.D. Va. Feb. 7, 2013).  "Therefore, no comparisons of their respective skills, effort, and responsibilities can be made." Id.  Indeed, "an Equal Pay Act plaintiff 'cannot rest on the bare allegation' that [he] is receiving lower pay for equal

16

work; [he] must also show that the comparison [he] is making is an appropriate one." Strag v. Bd. of Trs., 55 F.3d 943, 950 (4th Cir. 1995) (quoting Soble v. Univ. of Md., 778 F.2d 164, 167 (4th Cir. 1985)). "In the instant case, [Plaintiff] failed to make a proper comparison, and thus did no more than prove that [he] and [female faculty] are paid different salaries. That, on its own, is not actionable under the Equal Pay Act." Strag, 55 F.3d at 950. Accordingly, because Plaintiff's Amended Complaint fails to sufficiently allege any facts showing that higher-paid female "employees hold jobs that require equal skill, effort, and responsibility" and "that such jobs are performed under similar working conditions," Brinkley, 180 F.3d at 613, Plaintiff's EPA claim is **DISMISSED WITHOUT PREJUDICE.**

### C. Title VII Claim

Plaintiff's Amended Complaint alleges that "inferential statistical analyses" of "sample data from departments within the University community" show that Defendants "engag[ed] in a pattern or practice of discrimination, based on race," in violation of Title VII, causing "[b]lack faculty of equal qualifications, and responsibilities, and job assignments" to be "disadvantaged in terms of salaries, as compared to white faculty." Pl.'s Am. Compl. ¶¶ 10, 13, ECF No. 12. Defendants argue that Plaintiff's Title VII claim should be dismissed because Plaintiff alleges no "facts from which the Court [can]

17

infer discriminatory motives in the pay variance described" and because Plaintiff fails to allege facts showing that his job "was substantially similar to a higher paying job performed by a . . . white professor." Defs' Br. at 10, 11, ECF No. 14.[4]

To establish a prima facie case of wage discrimination under Title VII, a plaintiff must show: (1) that he is "a member of a protected class," and (2) "that the job [he] occupied was similar to higher paying jobs occupied by [employees outside the protected class]." Brinkley-Obu v. Hughes Training, 36 F.3d 336, 343 (4th Cir. 1994).[5] However, as the Fourth Circuit has observed, "statistics cannot alone prove the existence of a pattern or practice of discrimination, or even establish a prima facie case." Warren v. Halstead Indus., Inc., 802 F.2d 746, 753 (4th Cir. 1986), aff'd en banc, 835 F.2d 535 (4th Cir. 1988). Although a plaintiff is not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim, Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 545 (4th Cir. 2003), his complaint must allege sufficient facts establishing that he received "different treatment from similarly situated employees outside the protected class," Coleman v. Md. Court of Appeals, 626 F.3d 187,

---

[4] Plaintiff's Amended Complaint alleges only race discrimination under Title VII.

[5] The parties do not dispute that Plaintiff is "a member of a protected class." Brinkley-Obu, 36 F.3d at 343.

190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

Plaintiff describes himself as an "Associate Professor in the Department of Mathematics at Norfolk State University," Pl.'s Am. Compl. ¶ 1, ECF No. 12, and refers to the higher-paid white faculty simply as "teaching faculty," id. ¶ 2.  However, because Plaintiff "has based [his] allegations 'completely upon a comparison to an employee from a non-protected class,'" the "'validity of [his] prima facie case depends upon whether that comparator is indeed similarly situated.'"  Lawrence v. Global Linguist Solutions, LLC, No. 1:13cv1207, 2013 U.S. Dist. LEXIS 178817, *9 (E.D. Va. Dec. 19, 2013) (quoting Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010)).  Plaintiff asserts no facts establishing that he and the higher-paid white faculty "'dealt with the same supervisor, [were] subject to the same standards [or] . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'"  Lawrence, 2013 U.S. Dist. LEXIS 178817, at *10. Thus, although Plaintiff contends that "[b]lack faculty" and "white faculty" had "equal qualifications, and responsibilities, and job assignments," Pl.'s Am. Compl. ¶ 13, a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Accordingly, because Plaintiff "fails

to establish a plausible basis for believing [Plaintiff] and [the higher-paid white faculty] were actually similarly situated," Coleman, 626 F.3d at 191, Plaintiff's Title VII claim is **DISMISSED WITHOUT PREJUDICE.**

### D. Retaliation Claim

Plaintiff's Amended Complaint alleges that his resistance to Defendants' "uneven treatment of [the] faculty" and "his having filed charges of discrimination with the Equal Employment Opportunities Commission . . . triggered a wave of retaliatory acts that created a hostile and intimidating environment within which he was forced to operate." Pl.'s Am. Compl. ¶ 20, ECF No. 12. Plaintiff further contends that his "public embarrassment, feelings of insecurity in his job, public ridicule, [and] belittlement" was "sufficiently severe as to alter the conditions of his employment, creating an abusive working environment." Id. Defendants argue that Plaintiff's retaliation claim should be dismissed because Plaintiff failed to exhaust his administrative remedies and, in any event, Plaintiff's Amended Complaint fails to allege any "materially adverse action" that occurred because of Plaintiff's participation in "protected activity." Defs.' Br. at 12, ECF No. 14.

## 1. Exhaustion of Administrative Remedies

Plaintiff filed a Charge of Discrimination with the EEOC on December 8, 2011, "alleging discrimination on the basis of race, gender, and age." Pl.'s Am. Compl. ¶ 11, ECF No. 12.   In the "particulars" section of Plaintiff's Charge, Plaintiff reported that "[o]n or about April 4, 2008 . . . [he] learned that as a tenured faculty member [he] was paid less than newly hired instructors and assistant professors.   These findings were presented to the Board of Visitors, the President of the University, and the Provost of the University.   No corrective action has been taken." Defs.' Ex. 1, ECF No. 14-1.[6]  Plaintiff also alleged in his EEOC Charge his belief that "on the basis of sex (male) and age I continue to be paid unequal wages than younger and female employees." Id.

Generally, a Title VII plaintiff must exhaust all administrative remedies through an initial EEOC charge.   42 U.S.C. § 2000e-5(f)(1).   A plaintiff's failure "to exhaust administrative remedies . . . deprives the federal courts of

---

[6] Plaintiff's EEOC Charge of Discrimination was attached to Defendants' brief in support of their Motion to Dismiss. "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, [the Fourth Circuit has] held that when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th Cir. Va. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

subject matter jurisdiction over the claim." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009).   The Fourth Circuit has held that "a plaintiff may raise [a] retaliation claim for the first time in federal court" when the retaliation is "for filing the first charge." Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992).   "[I]f a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in [his] subsequent civil suit." Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005) (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-48 (4th Cir. 2000)).   However, this exception to the general rule does not apply when "the alleged retaliation occurred before the plaintiff filed an administrative complaint." Wright v. Carfax, Inc., 120 Fair Empl. Prac. Cas. (BNA) 1723, 2013 U.S. Dist. LEXIS 170419, at *13 (E.D. Va. Dec. 3, 2013).

Most of the "retaliatory acts" alleged in Plaintiff's Amended Complaint occurred before December 8, 2011.   Pl.'s Am. Compl. ¶ 20.   Plaintiff asserts that during "all of 2011," he was denied "the right to present an oral report." Id.   In March of 2011, Plaintiff's "reports to the Board of Visitors were omitted . . . from the BOV meeting handbook." Id.   On October 26, 2010, the University demanded "copies of [Plaintiff's]

22

emails pertaining to the most recent presidential search." Id. In the Fall of 2011, the University disposed of certain property and blamed Plaintiff. Id. On September 6, 2011, Defendants refused "to meet with [Plaintiff], or even to respond to his communications." Id. From "January, 2010 through February, 2011," the Board attempted "to induce the Provost to terminate [Plaintiff's] contract." Id. In fact, the only acts allegedly occurring after December 8, 2011 are the denial of Plaintiff's "most recent request for sabbatical leave,"[7] the 2012 denial of Plaintiff's "right to present an oral report . . . at meetings of the Board of Visitors," and the omission of Plaintiff's "report[] to the Board of Visitors . . . from the BOV handbook" in December 2011. Id.

Plaintiff's EEOC complaint alleged only pay discrimination, as evidenced by the boxes on the EEOC form marked "race," "sex," "age," and "other – Equal Pay," as well as Plaintiff's narrative complaining of "unequal wages." Defs.' Ex. 1, ECF No. 14-1. Plaintiff did not check the "Retaliation" box on the EEOC form. Id. Nor did Plaintiff "raise anything remotely resembling a claim for retaliation in his charge to the EEOC. He did not directly describe taking any actions that would generally

---

[7] Plaintiff's Amended Complaint does not specify the date of his request for sabbatical leave. Because the Court "must construe the complaint in favor of the plaintiff," Warth, 422 U.S. at 501, the Court deems this request to have occurred after his filing with the EEOC.

provoke retaliatory action, and he does not even use the word 'retaliate' or any of its forms." Wright, 2013 U.S. Dist. LEXIS 170419, at *15.  Cf. Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132-33 (4th Cir. 2002) (declining to consider plaintiff's retaliation claim where plaintiff failed to complain to the EEOC of retaliation and an "investigation of retaliation . . . could not reasonably be expected to occur in light of [plaintiff's] sole charge of race discrimination").  Because "the retaliation claim made in [Plaintiff's Amended] [C]omplaint does not reasonably relate to the claims made in his [EEOC] charge," Wright, 2013 U.S. Dist. LEXIS 170419, at *17, the Court finds that Plaintiff did not exhaust his administrative remedies as to the "retaliatory acts" alleged in his Amended Complaint.

### 2. Prima Facie Case of Retaliation

"The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." Coleman, 626 F.3d at 190 (citing Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004)).  Even if Plaintiff's retaliation claim was allowed to proceed as to the acts occurring after the filing of his charge with the EEOC, Defendants argue that Plaintiff's Amended Complaint fails to allege any facts establishing "material adversity" and "causation." Defs.' Br. at 12, ECF No. 14.

24

### a. Adverse Employment Action

Plaintiff alleges seven "retaliatory acts" by Defendants that subjected him to "public embarrassment, feelings of insecurity in his job, public ridicule, [and] belittlement." Pl.'s Am. Compl. ¶ 20. "An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)). A hostile work environment may satisfy the "adverse employment action" prong of the prima facie case for retaliation if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1217–18 (D.C. Cir. 2006)); see also Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001) ("Retaliatory harassment can constitute adverse employment action."), overruled on other grounds by White, 548 U.S. at 67–68. To advance such a claim, a plaintiff must show that his employer engaged in unwelcome conduct that was "sufficiently severe or pervasive as to alter the conditions of [his] employment and create an abusive atmosphere." EEOC v. Cent.

Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009). An employer's action is not materially adverse if it amounts to "petty slights or minor annoyances that often take place at work and that all employees experience." White, 548 U.S. at 68.

Plaintiff's "formulaic recitation of the elements of a [hostile work environment] cause of action," Twombly, 550 U.S. at 555, - namely, that Defendants subjected him to "a hostile and intimidating environment" that was "sufficiently severe as to alter the conditions of his employment," Pl.'s Am. Compl. ¶ 20, ECF No. 12, - simply "will not do," Twombly, 550 U.S. at 555. Plaintiff presents no facts showing how any of Defendants' actions "adversely affect[ed] the terms, conditions, or benefits of [his] employment." Holland, 487 F.3d at 219. Nor does Plaintiff allege that Defendants' actions "dissuaded [him] from making or supporting a charge of discrimination." White, 548 U.S. at 68. Indeed, as discussed above, most of Defendants' alleged "retaliatory acts" occurred before Plaintiff made his official charge of discrimination to the EEOC. Because Defendants' actions were, at worst, "normally petty slights, minor annoyances, and simple lack of good manners," White, 548 U.S. at 68, Plaintiff fails to allege that he suffered an "adverse employment action," Coleman, 626 F.3d at 190.

### b. Causal Link between Protected Activity and Adverse Employment Action

"An employee need not prove causation itself at the prima facie case stage: rather, a close temporal relationship between the protected activity and the adverse action is sufficient to show a causal nexus." Brockman v. Snow, 217 F. App'x 201, 207 (4th Cir. 2007) (citing Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006)). "While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" Yashenko, 446 F.3d at 551 (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)).

Plaintiff alleges seven retaliatory acts by Defendants, occurring between January, 2010 and July 3, 2012. His Amended Complaint supplies only the date of his charge filed with the EEOC - December 8, 2011. Plaintiff fails to allege any specific dates or timeframes corresponding to his "fight against salary inequities" or for his "having been a vocal and persistent critic of the NSU administration." Pl.'s Am. Compl. ¶ 20.[8]   In

---

[8] Plaintiff asserts that "the EEOC filing was not the only protected activity engaging [his] attention, active participation, and commitment," but "was just one of the several and continuing acts which triggered the Defendants' response." Pl.'s Br. in Opp. at 6-7, ECF No. 17.   For purposes of this discussion, the Court assumes without deciding that Plaintiff's "fight against salary inequities" or "having been a vocal and persistent critic of the NSU administration"

light of the Court's determination regarding exhaustion of administrative remedies and material adversity, the Court need not examine each alleged retaliatory act to determine whether he has established "closeness in time" sufficient to "mak[e] a prima facie case of causality." Yashenko, 446 F.3d at 551. Accordingly, because Plaintiff failed to exhaust his administrative remedies as to his retaliation claim and, in any event, fails to present any facts showing an adverse employment action by Defendants against him, Plaintiff's retaliation claim is **DISMISSED WITHOUT PREJUDICE**.

### E. Leave to Amend to Cure Deficiencies

As discussed, the Court has granted leave to Plaintiff to once more amend his Amended Complaint for the "purpose of inserting the President of Norfolk State University, in his individual capacity, as a Defendant." Pl.'s Br. in Opp. at 8, ECF No. 17. And, as discussed at length, the Court has determined that Plaintiff's Amended Complaint, in its current state, is insufficient to support any of his discrimination and retaliation claims.

Plaintiff has not expressly requested leave to further amend his Complaint regarding any deficiencies identified by Defendant or this Court. However, because it is at least

---

qualifies as a "protected activity" for purposes of his retaliation claim. Id.

conceivable that Plaintiff could set forth sufficient facts to support his discrimination and retaliation claims, the Court **GRANTS** Plaintiff fourteen (14) days from the date of this Opinion and Order, if he so desires, to file a Second Amended Complaint curing the deficiencies identified herein.

### IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**.  Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is **ORDERED** to file within fourteen (14) days, if desired, a Second Amended Complaint curing the deficiencies identified in this Opinion and Order.

**IT IS SO ORDERED.**


_____  /s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February  13  , 2014