**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| Dr. ARCHIE EARL )  ) **Plaintiff,** )  ) v. ) **Civil Case No. 2:13CV148**  ) NORFOLK STATE UNIVERSITY, ET AL )  )  ) **Defendants,** ) | |

**BRIEF IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

The Defendants, Norfolk State University, The Board of Visitors of Norfolk State University, and the Commonwealth of Virginia (collectively, referred to herein as "NSU" or the "University"), by the Attorney General of Virginia, hereby submit this Brief in Support of their Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") (ECF Doc. #22, 23).[1]

## I.   INTRODUCTION

Dr. Archie Earl ("Earl") is a black, over age 40, male professor in the Mathematics Department at Norfolk State University. His Second Amended Complaint filed Feb. 27, 2014, as his earlier complaints, alleges discrimination in violation of the Equal Pay Act ("EPA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII") (both status discrimination and retaliation), and the Age Discrimination in Employment Act ("ADEA").

---

[1] A newly added Defendant, Dr. Tony Atwater ("Atwater") has yet to be served with process. Atwater was President of NSU until August 23, 2013 but is no longer President. Adding him as a Defendant in his individual capacity, as discussed herein, is futile.

## II. ARGUMENT

A. <u>**Limited Scope of Consideration: Mathematics Department at NSU**</u>

Earl persists in referring to "all Black faculty," "all male faculty," or "all NSU faculty over age 40." SAC, ¶ 18-20 and Prayer for Relief. Earl was granted leave to amend his Complaint to go beyond the generalities of a University-wide salary study and address similarly situated teaching faculty employed under the same or similar working conditions and the same supervisor. *Earl v. Norfolk State Univ.*, 2014 U.S. Dist. LEXIS 18583, *18-19 (E.D. Va. Feb. 13, 2014). That means the comparators necessary to prove the claim must teach in the same department, the Mathematics Department.

B. <u>**This Court Lacks Jurisdiction Over Earl's Cause of Action for Age Discrimination Under the ADEA**</u>**.**

The District Court has already ruled that Eleventh Amendment immunity bars actions that would be filed under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") against NSU for money damages. *Earl*, 2014 U.S. Dist. LEXIS 18583, at *11-13. The SAC prays for declaratory relief against Atwater and compensatory damages of $100,000 under the ADEA (retaliation provisions) against an unspecified Defendant. SAC, Pages 15-16. Atwater is sued for ADEA violations in his individual capacity. SAC, ¶ 16.

Individuals who manage or supervise are not "employers" who must defend actions brought under the ADEA. *Birkbeck v. Marvel Lighting Corporation,* 30 F.3d 507, 510 (4th Cir. 1994). *Birkbeck* applies to individuals working in the public sector. *See*, *e.g. Cross v. Suffolk City School Bd.*, 2011 U.S. Dist. LEXIS 75970, *12-13 (E.D. Va. July 14, 2011) (Superintendent of the Suffolk Public Schools); *Rivers v. Bannister*, 2012 U.S. Dist. LEXIS 18034 (D. S. Car. Feb. 13, 2012) (Nurse Executive and Acting Director of Nursing, both for the South Carolina Department of Health).

When Atwater is served with process, the cause of action against him as stated in the SAC nevertheless fails.

C.    **Earl Fails to State a Cause of Action for Salary Discrimination under the EPA.**

The District Court has noted the elements of a prima facie case of sex discrimination under the EPA.   A party seeking to enforce the EPA must show "(1) that [his] employer has paid different wages to employees of the opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." *Earl*, 2014 U.S. Dist. LEXIS 18583, at *16-17, *citing Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 613 (4th Cir. 1999).

Earl's allegations regarding gender disparity appear in SAC, ¶ 15.  He recites that the comparators taught "courses that are fungible" if not the same.    "Fungible" is not the statutory requirement; the courses should require "equal skill, effort, and responsibility."  Furthermore, the individuals are not similarly situated with respect to tenure, teaching workload, teaching experience, and length of contract.

Nor has he alleged facts to show that they worked under "similar working conditions." For the salary disparities between the male and female comparator to be useful, the disparities must occur "under similar working conditions," which should mean in the same University term or year.  Earl does not state *when* the comparators earned $62,000 and $61,852, or even *when* he earned $57,605.  Market conditions for the employment of Mathematics professors certainly would vary over time.

Earl's factual allegations rely upon conclusions drawn about salaries by the Faculty Salary Issues Research Committee ("the Committee") that commenced its work in 2006.  SAC, ¶ 10.

Finally, the EPA has a statute of limitations, found in 29 U.S.C. § 255 (a). Ordinary violations have a two-year limitations, "willful violation" enlarges the recovery period to three years. This action began March 21, 2013. Earl may not have relief from the District Court with respect to workweeks prior to March 21, 2010. *See Maron v. Virginia Polytechnic Inst.*, 2013 U.S. App. LEXIS 2333, *20 (4th Cir. January 31, 2013). If Earl bases his back pay claim on the years of the Committee Study, many of the workweeks are barred from recovery.

D. **Earl Fails to Support a Title VII Pay Discrimination Action Due to Race/Gender.**

For salary discrimination, a male and black plaintiff must show that the job he occupied was substantially similar to a higher paying job performed by a female and/or white professor. Under the disparate treatment model of a Title VII action, a plaintiff retains the ultimate burden of proving intent to discriminate because of his race or gender. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 1002 (1988) (Blackmun, J., joined by Brennan, and Marshall, JJ., concurring in part and concurring in judgment) ("[A] disparate-treatment challenge focuses exclusively on the intent of the employer"); *Brinkley-Obu v. Hughes Training, Incorporated*, 36 F.3d 336, 345 (4th Cir. 1994). Plaintiff bears the burden of *explaining employer practices* that discriminate based on race or gender. *Miranda v. B&B Case Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992). Earl's salary study, while alleged to have revealed inequities, makes no accusation of intentional discrimination by NSU. The allegation that NSU promised cooperation and information and did not deliver on such promises (SAC ¶ 12, 13) is not sufficient because it reveals no reason for the inaction.

Moreover, Earl's Title VII action is barred by the statute of limitations and the requirements of disparate treatment cases. A Title VII charging party must file his charge of discrimination within three hundred (300) days of an adverse employment action. 42 U.S.C. §

4

2000e-5 (e) (1). The Supreme Court, construing the requirements of Title VII cases, concluded in *Ledbetter v. The Goodyear Tire & Rubber Company, Inc.*, 550 U.S. 618 (2007) that the employer's discriminatory intent and the "charging period" of the 300 days preceding the Charge filing, must be *coextensive*, otherwise no cause of action would accrue for the plaintiff. *Id.* at 642-43. To accrue, the cause requires employer's intent plus employee's loss of pay.

Lilly Ledbetter Fair Pay Act of 2009, (codified as amended at 42 U.S.C. § 2000e-5(e) (3) (2009)) ("the Fair Pay Act") altered the outcome of litigation similar to the *Ledbetter* case. As a consequence, 42 U.S.C. § 2000e-5 (e) (3) (A) was amended to state:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation . . . when a discriminatory compensation **decision** or other practice is adopted, when an individual becomes subject to a discriminatory compensation **decision** or other practice, or when an *individual is affected by application of a discriminatory compensation **decision** or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice*.

(Emphasis added.) Thus, the Fair Pay Act "required the adoption of a discriminatory compensation decision." *Mikula v. Allegheny County of Pennsylvania*, 583 F.3d 181, 184 (3rd Cir. 2009). However, as a result of the Fair Pay Act, the decision could precede the 300-day charging period by months, even years. However, the paychecks received by the employee must be smaller as a reflection of "periodic implementation of a previously made intentionally discriminatory employment decision or other practice." *Mikula* at 186 (internal quotation omitted). *See also Gianfrancisco v. Excelsior Youth Centers, Inc.*, 2012 U.S. Dist. LEXIS 97363 at *6 (D. Colo. July 13, 2012) (plaintiff need only show a wage event occurred during the charge filing period that is related to a discriminatory pay decision outside the time for filing a charge).

District Courts within the Fourth Circuit have followed this interpretation of the Fair Pay Act. In *Spraker v. RTG Furniture Corp.*, 2013 U.S. Dist. LEXIS 101064 (D. S. Car. July 19,

5

2013), Plaintiff complained of employer's postponement of her review date; such postponement is *not* a "discriminatory compensation decision." *Spraker* at *8-9.  By contrast, where a plaintiff points to denials of a promotion with a pay increase, "the employment action is Defendant's denial of the request," which meets the requirements of the Fair Pay Act.  *Kramer v. Bd. of Education of Baltimore County*, 788 F. Supp. 2d 421, 427 (D. Md. 2011).

E. **The Second Amended Complaint Fails to State a Cause for Retaliation Under Title VII[2].**

Earl's allegations as to Retaliation for protected activity or protected opposition to unfair employment practices appear in SAC, ¶ 21.  They appear as (a) through (g) and appear identical to those set forth in the Amended Complaint, ¶ 20.  The District Court has already *rejected* such allegations as not stating a prima facie case of retaliation (no facts supporting a "material adversity") and because of Earl's failure to exhaust his administrative remedies before the EEOC.  Earl has cured no deficiencies.   The Retaliation cause must again be dismissed.

### III.    CONCLUSION

Earl has not in the SAC set forth a viable complaint of Age Discrimination against a Defendant.  His EPA allegations fail to meet the second ("equal skills") and third ("similar working conditions") prongs of the liability test.  Earl may not proceed under Title VII, even with the benefit of the Fair Pay Act, because NSU made no racial or sexual discriminatory decision, affecting Earl's pay, at any time.   Finally, despite the District Court's guidance, Earl has simply restated his failing Retaliation claim.  The SAC should be dismissed with prejudice.

---

[2]  Or Retaliation under the EPA or the ADEA.

Should any part of the SAC survive, the District Court should define the comparator group, going forward, as those teaching faculty in the Department of Mathematics similarly situated.

WHEREFORE, the Defendants respectfully request this Court to dismiss the Second Amended Complaint with prejudice or grant such other relief deemed appropriate. Further amendments would appear to be futile.

          Respectfully submitted,

          **NORFOLK STATE UNIVERSITY,**
          **and**
          **THE BOARD OF VISITORS OF**
          **NORFOLK STATE UNIVERSITY, et. al.,**
          **and**
          **THE COMMONWEALTH OF VIRGINIA**

By: _____/s/_____
      Sydney E. Rab, Senior Assistant Attorney General

Mark Herring
Attorney General of Virginia

Cynthia E. Hudson
Chief Deputy Attorney General

Rhodes Ritenour
Deputy Attorney General, Civil Division

Peter R. Messitt
Senior Assistant Attorney General, Trial Section Chief

Pamela Boston (VSB No.: 16730)
General Counsel for the Norfolk State University and
Assistant Attorney General
700 Park Ave, Room 540
Norfolk, VA 23504
Phone: 757-823-2294
Fax: 757-823-2288
pfboston@nsu.edu

_____/s/_____
Sydney E. Rab

Sr. Assistant Attorney General
Va. State Bar No. 15105
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219
(804) 786-1109
Fax: (804) 371-2087
srab@oag.state.va.us

**Counsel for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that, on this 7th day of March, 2014 the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

> Guy T. Hogan, Esq.
> VSB 36832
> 47 West Queens Way, Suite D
> Hampton, VA 23669
> Tel: 757-726-2800
> Fax: 757-726-0822
> Email: guyhogan@cox.net
> **Counsel for Plaintiff**

By: _____/s/_____
Sydney E. Rab* (VSB No.: 15105)
Senior Assistant Attorney General
Office of the Attorney General
900 East Main Street
Richmond, Virginia 23219
Phone: 804-786-1109
Fax: 804-371-2087
srab@oag.state.va.us
Counsel for Defendants

8