UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

JUN 2 6 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

DR. ARCHIE EARL,

      Plaintiff,

v.

      Civil No.: 2:13cv148

NORFOLK STATE UNIVERSITY,
THE BOARD OF VISITORS OF
NORFOLK STATE UNIVERSITY,
THE COMMONWEALTH OF VIRGINIA,
and DR. TONY ATWATER, FORMER
PRESIDENT OF NORFOLK STATE
UNIVERSITY, INDIVIDUALLY,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on a third motion to dismiss filed by Norfolk State University ("NSU"), the Board of Visitors of Norfolk State University ("BOV"), the Commonwealth of Virginia, and Dr. Tony Atwater (collectively "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). For the reasons set forth below, Defendants' motion is **GRANTED IN PART**, and **DENIED IN PART**.

## I.  **FACTUAL AND PROCEDURAL HISTORY**[1]

### A. Background

Dr. Archie Earl ("Plaintiff") is a "66 year old, Black, male Associate Professor in the Department of Mathematics at Norfolk State University, a "state supported" university located in "the Commonwealth of Virginia." Pl.'s Second Am. Compl. ¶ 1, ECF No. 23.[2]  Aside from his professorial duties at NSU, Plaintiff also serves as "Chair of the NSU Faculty Salary Issues Research Committee" ("the Committee"). Id. In 2006, according to Plaintiff's Second Amended Complaint, the Committee began to study "gross inequities in faculty salaries." Id. ¶ 10. The purpose of the Committee's study was to "advise the NSU administration of its findings, in order that remedial steps

---

[1] The facts recited here are drawn from Plaintiff's Second Amended Complaint and are assumed true for the purpose of deciding the motion currently before the Court. They are not to be considered factual findings for any purpose other than consideration of the pending motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (observing that "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint"); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) ("[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.").

[2] On February 27, 2014, Plaintiff filed two documents titled "Amended Complaint." See ECF Nos. 22-23. The description associated with the first filing states that the Second Amended Complaint is "against Dr. Archie Earl," ECF No. 22, and the second filing is "against All Defendants," ECF No. 23. The documents themselves appearing to be identical, the Court refers to the second filing "against all Defendants" as Plaintiff's Second Amended Complaint. ECF No. 23.

could be taken to redress such inequities, if any, as may be uncovered." Id. Plaintiff alleges that the Committee requested the relevant "data from the NSU Human Resources Office," but claims that "the data provided were filled with serious errors that would have led to unreliable results." Id. Plaintiff does not describe the nature of the alleged errors found in the data. The "Committee then decided to modify its study" to analyze "only sample data" from the Committee members' own departments. Id. ¶ 11. According to Plaintiff, NSU advised the Committee "that it was preparing its own study of the salary inequities question, promising to reveal the results of this study so that the matter may be resolved reasonably, amicably, and with dispatch." Id.

Meanwhile, "based on the Committee's ongoing analysis," Plaintiff asserts that he discovered that his own salary was "woefully inadequate" compared to "recent hires, and white faculty, and younger faculty, and female faculty," although Plaintiff alleges that "he was at least as qualified" and that "the responsibilities of the job[s] were essentially equivalent." Id. ¶ 12. "[U]sing inferential statistical analyses" of the sample data, the Committee determined that NSU was discriminating against "[b]lack faculty," "men," and "aged (over 40) faculty." Id. ¶¶ 14-16. However, Plaintiff does not provide the results of the Committee's "inferential statistical

3

analyses" or otherwise describe the results of the study, except with respect to his own salary. Id.

On "December 8, 2011," after failed "attempts at discussions with the administration," Plaintiff filed in his own name a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), "alleging discrimination based on the basis of race, gender, and age." Id. In the Charge of Discrimination ("EEOC charge"), Plaintiff named "NORFOLK STATE" as his employer, alleged that the discrimination occurred between April 1, 2008 and December 8, 2011, and checked the appropriate box to indicate a "CONTINUING ACTION." EEOC Charge, ECF No. 14-1.[3] As the types of discrimination he allegedly suffered, Plaintiff checked the boxes for "RACE," "SEX," "AGE," and "OTHER," with the words "Equal Pay" typed in a box next to the checked "OTHER" box. Id. In the "Particulars" section of the EEOC charge, Plaintiff stated the following:

I. I was hired on or about August 1991 as a Mathematics Professor in the College of Science, Engineering and Technology.

_____

[3] As noted in the Court's February 13, 2014 Opinion and Order, Plaintiff's EEOC charge, attached to Defendants' Second Motion to Dismiss, see ECF No. 14-1, may be considered by the Court on a Motion to Dismiss because the EEOC charge "'was integral to and explicitly relied on in the complaint and [because] the plaintiff[] do[es] not challenge its authenticity,'" Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)); see also Johnson v. Portfolio Recovery Assocs., LLC, 682 F. Supp. 2d 560, 570 (E.D. Va. 2009) (considering EEOC charge attached to Defendant's brief supporting motion to dismiss "for the purposes of determining the scope of such charge").

II.  On or about April 4, 2008 as a result of a study completed by the Faculty Senate Salary Issues Research Committee I learned that as a tenured faculty member I was paid less than newly hired instructors and assistant professors.  These findings were presented to the Board of Visitors, the President of the University, and the Provost of the University.  No corrective action has been taken regarding this inequity in salary.

III.  I believe that on the basis of sex (male) and age I continue to be paid unequal wages than younger and female employees of the University in violation of Title VII of the Civil Rights Act of 1964, as amended, the Equal Pay Act of 1963, as amended and the Age Discrimination in Employment Act of 1967, as amended and the Virginia Human Rights Act, VA Code, 2.2-3900, et seq.

Id.  Plaintiff asserts that, on December 21, 2012, after the "EEOC ended its investigation," the EEOC "issued a right-to-sue letter to Plaintiff."  Pl.'s Second Am. Compl. ¶ 12, ECF No. 23.

## B. **Plaintiff's Causes of Action**

Plaintiff's Second Amended Complaint is hardly a model of clarity.  See Fed. R. Civ. P. 10(b).  Plaintiff alleges no "Counts" against Defendants, but instead presents four "Causes of Action," incorporating "each and every preceding paragraph numbered above, inclusive, just as though they were fully set forth herein."  Pl.'s Second Am. Compl. at 10, ECF No. 23.  Each Cause of Action cites the statute allegedly violated by Defendants, but fails to clearly identify the type of discrimination alleged or the theories supporting Plaintiff's claims.  However, because the Court must "view[] even poorly

5

drafted complaints in a light most favorable to the plaintiff,"
Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 n.4 (4th Cir.
1993), the Court liberally construes Plaintiff's four Causes of
Action and attempts to present the pertinent facts, scattered
throughout his Second Amended Complaint, to support each Cause
of Action.

## 1. Title VII Race Discrimination

First, Plaintiff's Second Amended Complaint alleges wage
discrimination by Defendants on the basis of race, in violation
of "Title VII, 42 U.S.C. § 2000 et seq." Pl.'s Second Am.
Compl. ¶ 18, ECF No. 23. Plaintiff brings his Title VII race
discrimination claim as a class action, pursuant to Federal Rule
of Civil Procedure 23, id. ¶ 8, on behalf of "all Black Faculty
at Norfolk State," id. ¶ 18. Plaintiff's Cause of Action
alleges that Defendants advanced a "policy of unequal salaries
for essentially the same work as White faculty, requiring equal
skill, effort, and responsibility by otherwise comparable Black
faculty." Id.

Paragraph 14 of Plaintiff's Second Amended Complaint
asserts that, "using inferential statistical analyses" on the
sample data obtained from the Committee's members, the Committee
determined that "NSU was engaging in a pattern or practice of
discrimination, based on race, in its policy of faculty
remuneration, in violation of Title VII." Id. ¶ 14.

6

Specifically, Plaintiff alleges that "[b]lack faculty of equal qualifications, and responsibilities, and job assignments were much disadvantaged in terms of salaries, as compared to white faculty." Id. The only "[b]lack faculty" mentioned in Plaintiff's Second Amended Complaint is Plaintiff himself. Id.

In support of his Title VII race discrimination claim, Plaintiff identifies two white comparators, whom he refers to as "W1 and W2 (to keep their identities private)." Id. Plaintiff alleges that W1 and W2 are "both on the same nine month contract as Plaintiff," and "work under the same supervisor [as Plaintiff]," but asserts that W1 and W2 teach only "9 hours per semester . . . while Plaintiff teaches 12 hours per semester." Id. Plaintiff asserts that W1 is an untenured assistant professor, "with far less teaching experience than Plaintiff," and that W2 is a tenured associate professor "with about the same number of years teaching as Plaintiff." Id. Plaintiff alleges that W1 "earned $58,000 and W2 earned $68,505," and "yet Plaintiff earned $57,605." Id.

### 2. Equal Pay Act/Title VII Sex Discrimination

Next, Plaintiff's Second Amended Complaint alleges wage discrimination by Defendants based on sex, in violation of the "Equal Pay Act, 29 U.S.C. § 206(d)." Id. ¶ 19. Plaintiff brings his EPA claim "as a collective action," "pursuant to 29 U.S.C. § 216(b) (the Fair Labor Standards Act collective action

provision," id. ¶ 8, on behalf of "all male faculty at NSU who chose [sic] to opt in," id. ¶ 19. Plaintiff alleges an "inequity of pay as between female faculty and similarly qualified male faculty at NSU, for equal work on jobs requiring equal skill, effort and responsibility." Id.

Paragraph 15 of Plaintiff's Second Amended Complaint asserts that the Committee concluded, "after similar statistical analyses, . . . that NSU was impermissibly discriminating against men, and in favor of women, of comparable qualifications and responsibilities, and skill in salary assignments, and all this in violation of the Equal Pay Act." Id. ¶ 15. Plaintiff is the only affected male faculty member mentioned in his Second Amended Complaint.

In support of his EPA claim, Plaintiff identifies two female comparators, whom he refers to as "F1, and F2 (to protect their privacy)." Id. Plaintiff asserts that F1 and F2 "teach in the same department as Plaintiff, and they all teach the same courses, or, at worst, courses that are fungible." Id. Plaintiff asserts that they "work under the same chairperson, and work under nine month contracts, even though F1 and F2 teach nine hours per semester, while Plaintiff carries a twelve hour load." Id. According to Plaintiff, F1 is an untenured assistant professor with "very little teaching experience," and F2 is an untenured associate professor with "experience nearly

8

as much as Plaintiff's." Id. Plaintiff alleges that "F1 earns $62,000, and F2 earns $61,852, while Plaintiff earns $57,605." Id.

Plaintiff's second Cause of Action asserts that the alleged "violations of the Equal Pay Act are also, ipso facto, violations of Title VII." Id. ¶ 19. Plaintiff brings his Title VII sex discrimination claim as a class action, pursuant to Federal Rule of Civil Procedure 23. Id. ¶ 8. Plaintiff asserts no additional facts specific to his Title VII sex discrimination claim.

### 3. ADEA Age Discrimination

Plaintiff's third Cause of Action in the Second Amended Complaint alleges wage discrimination by Defendants on the basis of age, in violation of the "Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq." Id. ¶ 20. Plaintiff brings his ADEA age discrimination claim "as a collective action, . . . pursuant to 29 U.S.C. § 216(b) (the Fair Labor Standards Act collective action provision." Id. ¶ 8. Plaintiff bases his age discrimination claim upon allegedly "discriminatory practices and policies at NSU, continued wherein older faculty are treated unequally in terms of salaries, and also in respect of the new Post Tenure Review policy, enforced by Pres. Tony Atwater." Id. ¶ 20. Plaintiff's Second Amended Complaint mentions no other "older faculty" besides Plaintiff himself. Id.

9

Paragraph 16 of Plaintiff's Second Amended Complaint asserts that, "relying on statistical analyses of the sample data," the Committee determined "that NSU was discriminating against its aged (over 40) faculty in terms of salary." Id. ¶ 16. Plaintiff identifies three comparators, all "under 40 years of age," whom Plaintiff refers to as "P1, P2, and P3." Id. Plaintiff alleges that all three comparators are untenured and "have minimal teaching experience, as compared to Plaintiff." Id. He asserts that the younger comparators "work under the same conditions in the same department," teaching "a nine hour load each semester, compared to Plaintiff's twelve hour load." Id. Plaintiff alleges that "P1 earns $62,000, P2 earns $58,000, and P3 earns $63,000, while, of course, Plaintiff earns $57,605." Id.

Plaintiff's Second Amended Complaint also describes "NSU's new policy of post tenure review (PTR)," which "contains a provision requiring faculty who were tenured for twenty or more years at NSU to be subjected to PTR three years after the enactment of the policy." Id. Plaintiff asserts that "[o]ther tenured faculty have a longer time from the enactment of the policy to their first PTR," and concludes that the PTR "policy has a discriminatory impact on older faculty." Id. Plaintiff does not further explain either the PTR process or how being

subjected to PTR earlier than other tenured faculty has an adverse discriminatory effect on older faculty.

Plaintiff brings his ADEA age discrimination claim "solely against Dr. Tony Atwater, in his individual capacity, since it was he who enforced the policy, and it was he who refused to discuss reform." Id.

## 4. Retaliation

Plaintiff's final Cause of Action asserts retaliation by Defendants, "grounded on [Defendants'] alleged violations of Title VII, ADEA, and EPA." Plaintiff claims that Defendants retaliated against him "for having led in the fight against salary inequities, for having been a vocal and persistent critic of the NSU administration for its uneven treatment of its faculty," and "for his having filed charges of discrimination with the [EEOC]." Id. ¶ 21. Plaintiff alleges that his "decision to file an EEOC complaint . . . triggered a new wave of retaliatory acts that perpetuated this hostile and intimidating environment within which he was being forced to operate from 2006 forward." Id. Specifically, Plaintiff alleges the following "retaliatory acts" by Defendants:

a) "his most recent request for sabbatical leave, in 2008, was denied by NSU; with excuse that 'he could not be spared;'"

11

b) "he was denied (all of 2011, and 2012) the right to present an oral report, as Faculty Senate president, at meetings of the Board of Visitors;"

c) "his reports to the Board of Visitors were omitted, without explanation, (March, December, 2011) from the BOV meeting handbook;"

d) NSU, "through the University Counsel, demanded (10/26/2010) copies of all [Plaintiff's] emails pertaining to the most recent presidential search, even though Faculty were excluded from the search process;"

e) NSU "disposed (Fall, 2011) of Faculty Senate office furniture, [office equipment], office supplies, financial records, check books, grievance records, without proper authorization . . . and then blamed [Plaintiff];"

f) "the president of [NSU], Dr. Atwater, as well as the University Director of Human Resources and the [BOV] refused, on several occasions (9/6/2011, 7/3/2012), to meet with [Plaintiff] or even to respond to his communications;"

g) "the Board attempted (January, 2010 through February, 2011) to induce the Provost to terminate [Plaintiff's] contract with [NSU], notwithstanding

> that this would have been without cause, and
> violative of his tenure status."

Id.

Plaintiff alleges that Defendants' "actions had the effect of subjecting the Plaintiff to public embarrassment and humiliation, feelings of insecurity in his job, public ridicule, [and] belittlement." Id. Furthermore, Plaintiff contends that Defendants' retaliatory acts forced him "to operate in an environment that was hostile and filled with pervasive intimidation, and insult that was sufficiently severe as to significantly alter the conditions of his employment, creating an uncomfortable and threatening working environment." Id. Plaintiff also asserts that, when he was "snubbed by the Board," and "when a tenured faculty member . . . was summarily fired, in 2012, the intimidation level rose, as the faculty morale sank." Id.

## C. Procedural History

Plaintiff filed his original Complaint in this Court on March 21, 2013. ECF No. 1. Defendants filed a Motion to Dismiss Plaintiff's Complaint on July 22, 2013, ECF No. 4, which was rendered moot when Plaintiff filed an Amended Complaint on August 12, 2013, ECF No. 12. Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint, arguing that the Court lacked subject matter jurisdiction over Plaintiff's ADEA claim

and that his Title VII and EPA claims "fail[ed] to state a cause of action for which relief may be granted." ECF No. 13.

Upon review of Defendants' Second Motion to Dismiss, the Court identified numerous deficiencies in Plaintiff's Amended Complaint and dismissed the Amended Complaint without prejudice. Recognizing that it was "at least conceivable that Plaintiff could set forth sufficient facts to support his discrimination and retaliation claims," the Court granted Plaintiff leave "to file a Second Amended Complaint curing the deficiencies identified" upon the Court's review of Defendants' Second Motion to Dismiss. ECF No. 21 at 28-29; Earl v. Norfolk State Univ., No. 2:13cv148, 2014 U.S. Dist. LEXIS 18583, at *33 (E.D. Va. Feb. 13, 2014). Plaintiff filed his Second Amended Complaint on February 27, 2014. ECF No. 23.

Defendants filed a Third Motion to Dismiss on March 7, 2014, arguing that the Court continues to lack jurisdiction over Plaintiff's ADEA claim and alleging that Plaintiff has failed to cure the deficiencies noted by the Court in his Amended Complaint. See Defs.' Br. Supp. Mot. to Dismiss, ECF No. 25 at 2-6. Plaintiff responded with a four-page brief in opposition, presenting no argument regarding his ADEA and retaliation claims, and sparsely discussing his remaining claims. See Pl.'s Br. in Opp'n, ECF No. 28. Plaintiff does not request leave to amend his Second Amended Complaint, see id., as he did in his

14

previous responsive brief to Defendants' Second Motion to Dismiss, see ECF No. 17 at 8, but simply "urge[s] the Court to deny Defendants' Motion to Dismiss this Second Amended Complaint," Pl.'s Br. in Opp'n at 3, ECF No. 28. Defendants filed a reply brief on March 24, 2014, requesting that the Court dismiss Dr. Atwater from the case and dismiss Plaintiff's retaliation claim because Plaintiff failed to address those issues in his responsive brief, as directed by this Court's Local Rule 7(F). Defs.' Reply Br., ECF No. 29. Defendants also assert that Plaintiff has failed to timely "move for certification as a class action under Federal Rule[] of Civil Procedure 23" and, in any event, has failed to plead facts "pertain[ing] to a larger population of NSU faculty than [Plaintiff's] own Mathematics Department." Id. at 1. Accordingly, this matter is ripe for review.

## II. STANDARD OF REVIEW

Because this Court has an obligation to satisfy itself that it has subject matter jurisdiction over the case, the Court first examines the standard of review applicable to such consideration. Next, because Defendants have moved to dismiss claims due to alleged inadequacy, the Court also examines the standard of review applicable to such a motion to dismiss.

## A. Subject-Matter Jurisdiction – Rules 12(b)(1) and 12(h)(3)

Federal district courts "are 'courts of limited jurisdiction.'" Exxon Mobil Corp. v. Allapattah Servs., 545 U.S. 546, 552 (2005) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Consequently, "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). To be sure, "it is always incumbent upon a federal court to evaluate its jurisdiction sua sponte, to ensure that it does not decide controversies beyond its authority." Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988); see also Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. Va. 2005) ("A federal court has an independent obligation to assess its subject-matter jurisdiction, and it will 'raise a lack of subject-matter jurisdiction on its own motion.'" (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)); Vanderheyden v. Peninsula Airport Comm'n, 116 Fair Empl. Prac. Cas. (BNA) 1773, 2013 U.S. Dist. LEXIS 399, at *24 (E.D. Va. Jan. 2, 2013) (observing that "the Court can, and should, examine its jurisdiction over the suit sua sponte"). "Indeed, the absence of jurisdiction may be raised at any time during the case, and may be based on the court's review of the

16

evidence." Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); see also GO Computer, Inc. v. Microsoft Corp., 508 F.3d 170, 175 n.2 (4th Cir. 2007) (observing that "questions concerning subject-matter jurisdiction may be raised at any time by either party or sua sponte by this court" (quoting Plyler v. Moore, 129 F.3d 728, 731 n.6 (4th Cir. 1997)).

A party may move to dismiss an action for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). "Unlike a Rule 12(b)(1) motion addressing the lack of subject matter jurisdiction, a Rule 12(h)(3) motion 'may be asserted at any time and need not be responsive to any pleading of the other party.'" Brown v. Huntington Ingalls, Inc., No. 4:13cv26, 2013 U.S. Dist. LEXIS 146933, at *8 (E.D. Va. July 25, 2013) (quoting Rubin v. Buckman, 727 F.2d 71, 72 (3d Cir. 1984)). "Furthermore, when a district court is aware of the absence of subject matter jurisdiction, it must 'raise [such] lack of subject-matter jurisdiction on its own motion,' without regard to the positions of the parties." Id. at **8-9 (quoting Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg &

17

Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "[I]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## B. Failure to State a Claim — Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint, or a claim within a complaint, based on the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (omission in original). The United States Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts for the claim to be "plausible on its face" and thereby "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570 (internal citations omitted). The plausibility requirement is "not akin to a 'probability requirement,' but it asks for

18

more than a sheer possibility" that a defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 663.

Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Accordingly, "'Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.'" Twombly, 550 U.S. at 555 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)) (omission in original). A complaint may therefore survive a motion to dismiss "even if it appears 'that a recovery is very remote and unlikely.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

Although the truth of the facts alleged in a complaint is assumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted

inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd., 213 F.3d 175, 180 (4th Cir. 2000). In ruling on a 12(b)(6) motion, a district court "may consider documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Volunteer Fire Dep't, 684 F.3d at 467 (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

In employment discrimination cases, the Supreme Court has held that a complaint need not "contain specific facts establishing a prima facie case of discrimination under the framework set forth . . . in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 (2002). The Court explained that the "prima facie case under McDonnell Douglas . . . is an evidentiary standard, not a pleading requirement." Id. at 510. The United States Court of Appeals for the Fourth Circuit "has not, however, interpreted Swierkiewicz as removing the burden of a plaintiff to allege facts sufficient to state all the elements of [his] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (emphasis added). Thus, although a complaint need not contain "detailed factual allegations," a complaint containing mere "labels and conclusions" or a "formulaic

20

recitation of the elements of a cause of action will not do."
Twombly, 550 U.S. at 555.

## III.  DISCUSSION

Defendants allege that Plaintiff has again failed to name a
proper defendant with respect to his ADEA wage discrimination
claim, thus depriving the Court of subject matter jurisdiction
over such claim.   Defendants also contend that Plaintiff has
failed to cure the deficiencies noted by the Court in its
February 13, 2014 Opinion and Order, thus warranting dismissal
of  Plaintiff's  entire  Second  Amended  Complaint.    Before
proceeding to the merits of Defendants' Third Motion to Dismiss,
however,  the  Court  finds  it  necessary  to  address  a  few
preliminary matters.

## A.  Local Rule 7(F)(1)

First, the Court acknowledges Defendants' assertion that
Plaintiff has failed to respond to each of the arguments made by
Defendants in their Third Motion to Dismiss.   Specifically, the
Court observes that Plaintiff includes no discussion whatsoever
of his ADEA and retaliation claims in his responsive brief.
Local Rule 7(F) of this Court states that, when a motion is
filed in a civil case, the opposing party "shall file a
responsive brief."   E.D. Va. Loc. Civ. R.  7(F)(1)  (emphasis
added).  Defendants argue that, by failing to address all of the
issues  raised  by  Defendants  in  their  brief,  Plaintiff  has

essentially failed to completely comply with Local Rule 7(F)(1)'s requirement that he "respon[d]." Id. Even if such failure were tantamount to a violation of Local Rule 7(F)(1), however, the Court declines to dismiss Plaintiff's ADEA and retaliation claims based solely upon his failure to address those arguments. Indeed, as recently noted by the United States Court of Appeals for the Fourth Circuit, even when a motion to dismiss is unopposed, "the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper." Stevenson v. Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014). The Court leaves for another day a discussion of the ramifications of failing to respond, either adequately or not at all, to a motion to dismiss.

## B. Exhaustion of Administrative Remedies

Next, the Court provides a brief review of the mandatory administrative process that a plaintiff must complete before filing suit under Title VII or the ADEA. Such review serves as a backdrop to the Court's discussion, based on an independent and obligatory "review of the evidence," Lovern, 190 F.3d at 654, regarding Plaintiff's failure to exhaust his administrative remedies before filing some of his claims in this Court, thus depriving this Court of subject matter jurisdiction over those claims.

22

"Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the [Equal Employment Opportunity Commission ('EEOC')]." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009).[4] "The purposes underlying the administrative charge requirement include giving the charged party notice of the claim, narrowing the issues for speedier and more effective adjudication and decision, and giving the EEOC and the employer an opportunity to resolve the dispute." 2 Barbara T. Lindemann, et al., Employment Discrimination Law 29-27 (5th ed. 2012); see also Balas v. Huntington Ingalls Indus., 711 F.3d 401, 407 (4th Cir. 2013).

It is well established in the Fourth Circuit that "[a]n employee seeking redress for discrimination cannot file suit until [he] has exhausted the administrative process." Id. at 406. "In any subsequent lawsuit alleging unlawful employment practices under Title VII [or the ADEA], a federal court may only consider those allegations included in the EEOC charge." Id. at 407 (citing Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to

---

[4] "[T]he Equal Pay Act . . . has no requirement of filing administrative complaints and awaiting administrative conciliation efforts." Cnty. of Wash. v. Gunther, 452 U.S. 161, 175 n.14 (1981).

limit the scope of any subsequent judicial complaint.")). If "'a plaintiff's claims in [his] judicial complaint are reasonably related to [his] EEOC charge and can be expected to follow from a reasonable administrative investigation,' [he] 'may advance such claims in [his] subsequent civil suit.'" Sydnor v. Fairfax Cnty., 681 F.3d 591, 594 (4th Cir. 2012) (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000)). However, if the claims "'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" Balas, 711 F.3d at 407-08 (quoting Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005)).

"In determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency." Id. at 408. Although an EEOC charge should be construed by the Court "'with utmost liberality,'" id. (quoting Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988)), the Court is "not at liberty to read into administrative charges allegations they do not contain," id. "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII [or ADEA] claim deprives the federal courts of subject matter jurisdiction over the claim." Jones, 551 F.3d at 300-01 (citing Davis v. N.C. Dep't of Corrs., 48

24

F.3d 134, 138-40 (4th Cir. 1995); Vance v. Whirlpool Corp., 707 F.2d 483, 486-89 (4th Cir. 1983)).

## C. Title VII and ADEA and Disparate Impact

The Court next considers Plaintiff's invitation to construe his Title VII (and, presumably, his ADEA) claims as claims of disparate impact, in addition to his apparent claims of disparate treatment.[5] However, even were the Court to liberally construe Plaintiff's Title VII and ADEA Causes of Actions as disparate impact claims, as Plaintiff suggests, the Court determines that it would nonetheless lack subject-matter jurisdiction over such claims because Plaintiff failed to exhaust his administrative remedies with respect to such claims.

A plaintiff alleging discrimination under Title VII or the ADEA may proceed with his claims under theories of disparate treatment, disparate impact, or both. See Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (recognizing that "Title VII prohibits both . . . disparate treatment" and "disparate impact" claims);

---

[5] Plaintiff argues in his responsive brief that he has sufficiently alleged a disparate impact claim, at least with respect to his Title VII race discrimination claim. See Pl.'s Br. in Opp'n at 3, ECF No. 28 (asserting that the "facially neutral policy in our case is NSU's salary system, and the disparate impact alleged on a protected group is the unequal assignment of salary to Blacks, similarly qualified and situated, as compared to Whites"). Because the Court must "view[] even poorly drafted complaints in a light most favorable to the plaintiff," Matkari, 7 F.3d at 1134 n.4, and because both a Title VII and an ADEA discrimination claim may rest upon a disparate impact theory, the Court presumes Plaintiff intends his argument to apply to both of his Title VII wage discrimination claims, as well as his ADEA claim.

Smith v. Jackson, 544 U.S. 228, 240 (2005) (noting that both Title VII and the ADEA "authorize recovery on a disparate-impact theory"); Merritt v. WellPoint, Inc., 615 F. Supp. 2d 440, 445 (E.D. Va. 2009) (observing that both "disparate treatment and disparate impact" claims "arise when an employer appears to have violated the ADEA").

If an employee's protected trait "played a role in the employer's decision-making process and had an influence on the outcome, the proper claim is disparate treatment." Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 141 (2000); Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (2000)). "'Proof of discriminatory motive is critical' in disparate treatment cases." Id. (quoting Hazen Paper, 507 U.S. at 610).

Disparate impact cases, on the other hand, do not require proof of "deliberate discriminatory motive," but require a plaintiff claiming disparate impact to allege "'the presence of a facially-neutral employment practice that as implemented treats protected groups of people worse than others.'" Cross v. Suffolk City Sch. Bd., No. 2:11cv88, 2011 U.S. Dist. LEXIS 75970, at *25 (E.D. Va. July 14, 2011) (quoting Padron v. Wal-Mart Stores, Inc., 783 F. Supp. 2d 1042, 1049 (N.D. Ill. 2003) (internal quotation marks omitted)). "Disparate impact seeks to ferret out employment practices that are the functional equivalent of intentional discrimination because they cause

26

significant adverse effects on protected groups." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 283 (4th Cir. 2005) (Gregory J., dissenting in part); see also Ricci, 557 U.S. at 577 (observing that disparate impact claims are directed toward "practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities").

Plaintiff's EEOC charge – a mandatory prerequisite for his Title VII and ADEA claims – makes no mention of any specific NSU policy, such as "NSU's salary system," Pl.'s Br. in Opp'n at 3, ECF No. 28, or its "PTR policy," Pl.'s Second Am. Compl. ¶ 16, ECF No. 23. "[N]or does it allege any facts that reasonably suggest a[ny] policy disparately impacting persons of [Plaintiff's] age, [race, or sex]." Cross, 2011 U.S. Dist. LEXIS 75970, at *26. Although Plaintiff alleged in his EEOC charge that he was paid less than "younger and female employees," EEOC Charge, ECF No. 14-1, he failed to allege in the charge that such discrepancy resulted from any "specific employment practice[]," Smith, 544 U.S. at 241 (holding that, in a disparate impact claim, "the employee is 'responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities" (quoting Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989))).

Because Plaintiff's EEOC charge only "focuses on the treatment [Plaintiff] received at the hands of [Defendants]" and "does not include any allegations that [any] policies or practices fell more harshly on one group of persons or another," Chamblee, 2014 U.S. Dist. LEXIS 50726, at **16-17, Plaintiff's Title VII and ADEA disparate impact claims, to the extent they exist in his Second Amended Complaint, are "not within the scope of [his] EEOC charge," Cross, 2011 U.S. Dist. LEXIS 75970, at *26. Thus, even if Plaintiff had advanced disparate impact claims under Title VII and the ADEA in his Second Amended Complaint, his failure to include such claims in his EEOC charge would nonetheless deprive the Court of subject matter jurisdiction over such claims. Accordingly, the Court declines Plaintiff's invitation to construe his Title VII (and ADEA) claims as disparate impact claims, and any such claims of disparate impact under Title VII and the ADEA, to the extent they are asserted in Plaintiff's Second Amended Complaint, are **DISMISSED** for lack of subject matter jurisdiction.

## D. Analysis of Plaintiff's Causes of Action

The Court now examines each of Plaintiff's Causes of Action alleged in the Second Amended Complaint. In doing so, the Court conducts its own "review of the evidence," Lovern, 190 F.3d at 654, to determine whether Plaintiff exhausted his administrative remedies with respect to his Title VII and ADEA disparate

28

treatment claims, such that the Court has subject matter jurisdiction over such claims, Fed. R. Civ. P. 12(h)(3). The Court also considers the merits of Defendants' Third Motion to Dismiss, in which Defendants (1) allege that Plaintiff has failed to name a proper defendant in his ADEA disparate treatment claim, thus depriving the Court of subject matter jurisdiction over such claim, Fed. R. Civ. P. 12(b)(1), and (2) contend that Plaintiff has not sufficiently alleged claims "upon which relief can be granted," Fed. R. Civ. P. 12(b)(6).

## 1. Title VII Race Discrimination

The Court first considers Defendants' argument that Plaintiff's Title VII race discrimination claim "is barred by the statute of limitations and the requirements of disparate treatment cases." Defs.' Br. Supp. Mot. to Dismiss at 4, ECF No. 25. Plaintiff disagrees, arguing that "[t]here is no statute of limitation problem" and that his Second Amended Complaint "support[s] a conclusion of intentional discrimination." Pl.'s Br. in Opp'n at 2, 3, ECF No. 28. The Court need not address either of Defendants' arguments, however, because the Court's independent "review of the evidence" reveals that Plaintiff failed to exhaust his administrative remedies with respect to his Title VII race discrimination claim, thus depriving the Court of subject matter jurisdiction over such claim. Lovern, 190 F.3d at 654.

### a. Subject Matter Jurisdiction/Exhaustion of Administrative Remedies

Plaintiff brings his Title VII race discrimination claim against Defendants, on behalf of "Plaintiff, individually, and by the putative Class consisting of all Black Faculty at Norfolk State University," alleging "unlawful discrimination . . . by the University through its policy of unequal salaries for essentially the same work as White faculty." Pl.'s Second Am. Compl. ¶ 18, ECF No. 23. However, Plaintiff's EEOC charge – a mandatory prerequisite to filing his Title VII race discrimination claim - makes no factual mention whatsoever of Plaintiff's race or any "policy of unequal salaries" at NSU affecting "all Black Faculty." Id. In fact, the only reference to race in Plaintiff's EEOC charge is located in the section titled "Discrimination Based On," where Plaintiff checked the box titled "Race." See EEOC Charge, ECF No. 14-1.

Many courts have recognized that "a plaintiff [who] checks off a box for a particular type of discrimination on a Charge form, but then leaves the form bereft of any allusion to allegations of such discrimination cannot be deemed to have exhausted that claim." Flora v. Wyndcroft Sch., No. 12-6455, 2013 U.S. Dist. LEXIS 25292, at **11-12 (E.D. Pa. Feb. 25, 2013) (citing McCutchen v. Sunoco, Inc., No. CIV.A.01-2788, 2002 U.S. Dist. LEXIS 15426, at *7-8 (E.D. Pa. Aug. 16, 2002) (observing

that, "where the EEOC charge is bereft of any allusion to allegations of racial discrimination, merely checking off the box of 'race' on the EEOC charge is insufficient to exhaust it as a claim").[6]   Indeed, to hold otherwise would effectively undermine the purposes of the administrative charge requirement by depriving the charged party of notice of the claim, the opportunity to narrow the issues for speedier and more effective adjudication and decision, and the opportunity to work with the

---

[6] See also Mackley v. TW Telecom Holdings, Inc., 296 F.R.D. 655, 669, 2014 U.S. Dist. LEXIS 6051, at **32-33 (D. Kan. 2014) (citing Duncan v. Manager, Dep't of Safety, City of Denver, 397 F.3d 1300, 1314 (10th Cir. 2005)) (observing that "an EEOC charge must allege facts in support of the claimant's discrimination claim beyond merely checking a box on the EEOC form"); Chambers v. Kan. City Kan. Cmty. College, No. 11-CV-2646, 2013 U.S. Dist. LEXIS 91586, at **7-8 (D. Kan. June 28, 2013) (determining court lacked subject matter jurisdiction where plaintiff "checked the box for age discrimination," but "his factual statement repeatedly explained that defendant discriminated against him based on race and gender"), approved on reconsideration by 2014 U.S. Dist. LEXIS 11728 (D. Kan. Jan. 29, 2014); Peyton v. AT&T Servs., No. 4:13CV00216, 2013 U.S. Dist. LEXIS 80996, at *6 (E.D. Mo. June 10, 2013) (observing "that merely checking a box – without more – does not fulfill the administrative purposes that a charge with the EEOC is designed to serve"); Allen v. St. Cabrini Nursing Home, Inc., No. 00-8558, 2001 U.S. Dist. LEXIS 3340, at *10 (S.D.N.Y. Mar. 9, 2001) (observing that "Plaintiff's mere checking off of boxes 'race' and 'color' . . . cannot suffice to confer jurisdiction over plaintiff's race and color discrimination claims"); Velazquez-Rivera v. Danzig, 81 F. Supp. 2d 316, 327 (D. P.R. 2000) ("Merely checking a box arguing age discrimination and not elaborating those claims does not fulfill the administrative purposes that a charge with the EEOC is designed to serve, and does not provide a basis for a later federal court discrimination complaint."), aff'd in relevant part by 234 F.3d 790, 794-95 (1st Cir. 2000); Mohan v. AT&T, No. 97 C 7067, 1999 U.S. Dist. LEXIS 10609, at **31-32 (N.D. Ill. June 30, 1999) (finding "that checking a box without delineating the particular aspects of the claim being asserted by checking that box does not satisfy the [exhaustion] test set forth in Jenkins v. Blue Cross Mut. Hosp. Ins., Inc., 538 F.2d 164 (7th Cir. 1976)").

EEOC to resolve the dispute. See Sydnor, 681 F.3d at 593 (observing that the "goals of providing notice and an opportunity for an agency response would be undermined . . . if a plaintiff could raise claims in litigation that did not appear in his EEOC charge").

Because Plaintiff's EEOC charge provides no factual basis whatsoever regarding any discrimination against Plaintiff because of his race, the Court finds that Plaintiff failed to exhaust his administrative remedies with respect to his Title VII race discrimination claim. Accordingly, Plaintiff's Title VII race discrimination claim is **DISMISSED** for lack of subject matter jurisdiction.

## 2. EPA Claim[7]

Next, the Court considers Defendants' arguments regarding Plaintiff's EPA claim. Defendants argue that Plaintiff's Second Amended Complaint fails to allege any violations of the EPA "within the window of the EPA period of limitations." Defs.' Reply Br. at 3, ECF No. 29. Defendants further allege that Plaintiff's EPA claim fails because Plaintiff has not alleged facts sufficient to show an EPA violation. Plaintiff does not address Defendants' EPA statute-of-limitations argument in his

---

[7] Although Plaintiff alleged his EPA and Title VII sex discrimination claims in the same numbered Cause of Action in his Second Amended Complaint, the Court considers them separately for the sake of clarity.

responsive brief, but asserts that his Second Amended Complaint "shows unambiguously" that he has sufficiently pled an EPA violation. Pl.'s Br. in Opp'n at 2, ECF No. 28.

## a. Statute of Limitations[8]

"The Equal Pay Act . . . was enacted in 1963 as an amendment to the Fair Labor Standards Act" ("FLSA"). Usery v. Charleston Cnty. Sch. Dist., 558 F.2d 1169, 1170 (4th Cir. 1977). "Under the Equal Pay Act, an action 'shall be forever barred unless commenced within two years after the cause of action accrued.'" Brinkley-Obu v. Hughes Training, 36 F.3d 336, 345-46 (quoting 29 U.S.C. § 255(a)). "[A] cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Under the EPA, "a cause of action 'accrues' each day that an employee is paid in a manner that violates the statute." 1 Lindemann, supra, at 19-60; see also Gregory v. FedEx Ground Package Sys., No. 2:10cv630, 2012 U.S. Dist. LEXIS 87798, at *9 n.5 (E.D. Va. May 9, 2012) ("A new cause of action accrues each time the employer issues a paycheck in violation of the FLSA."

---

[8] "[A] motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Id.

(citing Nealon v. Stone, 958 F.2d 584, 591 (4th Cir. 1992))).

Defendants allege that Plaintiff's "March 21, 2013 filing of this action does not capture pay for any workweeks covered by the Salary Study," and, thus, his Second Amended Complaint "does not assert, on its face, a timely cause of action." Defs.' Reply Br. at 3, ECF No. 29. It is true, as Defendants observe, that under the EPA, Plaintiff "may not have relief . . . with respect to workweeks prior to March 21, 2010." Defs.' Br. Supp. Mot. to Dismiss at 4, ECF No. 25. However, Plaintiff's Second Amended Complaint, drafted largely in the present tense, suggests that Plaintiff was receiving paychecks allegedly in violation of the EPA at least as recently as February 27, 2014 – the date Plaintiff filed his Second Amended Complaint. See Pl.'s Second Am. Compl. ¶ 15, ECF No. 23 (alleging that "female faculty members . . . teach in the same department as Plaintiff," "teach the same courses," "work under the same chairperson, and work under nine month contracts," but "F1 earns $62,000, and F2 earns $61,852, while Plaintiff earns $57,605" (emphasis added)). Defendants have identified no facts in the Second Amended Complaint affirmatively showing that Plaintiff last received a paycheck allegedly violating the EPA before March 21, 2010 (for willful violations) or March 21, 2011 (for ordinary violations). Accordingly, because this does not appear to be one of "the relatively rare circumstances where facts

34

sufficient to rule on [Defendants'] affirmative defense are alleged in the complaint," Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007), the Court **DENIES** Defendants' motion to dismiss Plaintiff's EPA claims based on the statute of limitations.

### b. Sufficiency of Pleading

The Court next determines whether Plaintiff's Second Amended Complaint sufficiently alleges an EPA claim "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To establish a prima facie case of wage discrimination under the EPA, a plaintiff must show: "(1) that [his] employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." Brinkley v. Harbour Rec. Club, 180 F.3d 598, 613 (4th Cir. 1999) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)). "Job descriptions and titles, however, are not decisive. Actual job requirements and performance are controlling." Brennan v. Prince William Hosp. Corp., 503 F.2d 282, 288 (4th Cir. 1974). "[T]he burden falls on the plaintiff to show that the skill, effort and responsibility required in [his] job performance are [substantially] equal to those of a higher-paid [fe]male employee." Wheatley v. Wicomico Cnty., 390

F.3d 328, 332 (4th Cir. 2004) (citing Corning Glass Works, 417 U.S. at 195).

Defendants argue that Plaintiff's Second Amended Complaint fails to allege that the jobs held by Plaintiff and his female comparators "require equal skill, effort, and responsibility" because Plaintiff merely "recites that the comparators taught 'courses that are fungible' if not the same." Defs.' Br. Supp. Mot. to Dismiss at 3, ECF No. 25 (quoting Pl.'s Second Am. Compl. ¶ 15, ECF No. 23). Defendants further argue that Plaintiff fails to sufficiently allege that he and his comparators are "similarly situated," or that any salary disparities occurred "under similar working conditions," including that the disparities existed "in the same University term or year." Id.

First, "application of the Equal Pay Act is not restricted to identical work." Brennan, 503 F.2d at 291. Rather, the jobs need only be "substantially equal." Id. at 290 (finding that, although the asserted work was "not identical," the "variations" did not "affect the substantial equality of their overall work"). "The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical." Brewster v. Barnes, 788 F.2d 985, 991 (4th Cir. 1986) (quoting Brobst v. Columbus Servs. Int'l, 761 F.2d 148, 156 (3d Cir.

1985)). If the jobs have a "'common core' of tasks," the "inquiry then turns to whether the differing or additional tasks make the work substantially different." Id.

Plaintiff's Second Amended Complaint claims that Plaintiff and his comparators teach "the same" or "fungible" courses. Pl.'s Second Am. Compl. ¶ 15, ECF No. 23. According to Merriam-Webster's Dictionary, "fungible" is defined as "being of such a nature that one part or quantity may be replaced by another equal part or quantity in the satisfaction of an obligation." Merriam-Webster's Collegiate Dictionary 507 (11th ed. 2008). Defendants make no assertion that any difference between the "fungible" classes "make the work substantially different." Brewster, 788 F.2d at 991. Thus, at least at this stage of the proceedings, the Court finds that Plaintiff has sufficiently alleged that the jobs are "substantially equal in skill, effort, and responsibility," Strag v. Bd. of Trustees, 55 F.3d 943, 948 (4th Cir. 1995) (emphasis added); cf. Ghayyada v. Rector & Visitors of the Univ. of Va., 2011 U.S. Dist. LEXIS 102279, at **19-20 (W.D. Va. Sept. 12, 2011) (finding plaintiff's use of word "counterpart" "connotes one who is similarly situated," implying performance of "essentially the same job functions, under essentially the same conditions" (emphasis added)).

Second, as discussed above, Plaintiff's EPA claim in his Second Amended Complaint is drafted in the present tense.

Plaintiff asserts that his comparators "teach in the same department as Plaintiff," and alleges that "F1 earns \$62,000, F2 earns \$61,852, while Plaintiff earns \$57,605." Pl.'s Second Am. Compl. ¶ 15, ECF No. 23 (emphasis added). Defendants do not identify any facts in Plaintiff's Second Amended Complaint or any other pleadings filed by Plaintiff suggesting that the salary disparities alleged by Plaintiff did not occur "in the same University term or year." Defs.' Br. Supp. Mot. to Dismiss at 3, ECF No. 25. Thus, the Court finds that Plaintiff's Second Amended Complaint sufficiently pleads - at least at this stage of the proceedings - "(1) that [his] employer has paid different wages to employees of opposite sexes; (2) that said employees hold jobs that require [substantially] equal skill, effort, and responsibility; and (3) that such jobs are performed under similar working conditions." Brinkley, 180 F.3d at 598. Accordingly, Defendants' Third Motion to Dismiss is **DENIED** with respect to Plaintiff's EPA claim.

## 3. Title VII Sex Discrimination

The Court next considers Defendants' argument that Plaintiff's Title VII sex discrimination claim is barred by the statute of limitations and, even if his claim were timely, Plaintiff "makes no accusation of intentional discrimination by NSU." Defs.' Br. Supp. Mot. to Dismiss at 4, ECF No. 25. Plaintiff contends that there is "no statute of limitation

38

problem" and asserts that he has "allege[d] facts to support a conclusion of intentional discrimination." Pl.'s Br. in Opp'n at 2, ECF No. 28.

### a. Subject Matter Jurisdiction/Exhaustion of Administrative Remedies

First, the Court looks to Plaintiff's EEOC charge and his Second Amended Complaint to determine whether Plaintiff exhausted his administrative remedies before filing his Title VII sex discrimination claim in this Court. Plaintiff's Second Amended Complaint asserts that Plaintiff discovered that "his salary was so woefully inadequate," compared to "female faculty." Pl.'s Second Am. Compl. ¶ 12, ECF No. 23. Thus, to the extent that Plaintiff alleges that his sex "played a role in the employer's decision-making process and had an influence on the outcome, the proper claim is disparate treatment." Merritt, 615 F. Supp. 2d at 445. Plaintiff's EEOC charge alleged: "I believe that on the basis of sex (male) . . . I continue to be paid unequal wages than . . . female employees." EEOC Charge, ECF No. 14-1. Because Plaintiff's EEOC charge also alleged that his sex "played a role in the employer's decision-making process" regarding his salary and that the resulting "outcome" was a lower salary than female employees, id., Plaintiff's EEOC charge sufficiently advanced a claim of disparate treatment. Thus, because Plaintiff's EEOC charge and his Title VII sex

discrimination claim in his Second Amended Complaint both "focus[] on the treatment that [Plaintiff] received at the hands of [Defendants]," Chamblee v. Old Dominion Sec. Co., L.L.C., No. 3:13cv820, 2014 U.S. Dist. LEXIS 50726, at \*\*16-17 (E.D. Va. Apr. 11, 2014), the Court finds that Plaintiff sufficiently exhausted his administrative remedies with respect to his Title VII sex discrimination claim of disparate treatment. Accordingly, the Court determines that it has subject matter jurisdiction over Plaintiff's Title VII sex discrimination disparate treatment claim.

### b. Statute of Limitations

Next, the Court determines whether Plaintiff "is barred by the statute of limitations" from bringing his Title VII sex discrimination claim against Defendants. Defs.' Br. Supp. Mot. to Dismiss at 4, ECF No. 25. A Title VII plaintiff must file a charge with the EEOC within 300 days of the adverse employment action, and must file suit in court within ninety days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. §§ 2000e-5(e)(1), (f)(1). The Lilly Ledbetter Fair Pay Act, passed by Congress in 2009 in response to the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618 (2007),[9] provides that "an unlawful employment practice

---

[9] In Ledbetter, the Supreme Court held that the time for filing an EEOC charge of compensation discrimination in violation of Title

occurs . . . when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid." 1 Lindemann, supra, at 19-74 (emphasis added) (quoting 42 U.S.C. § 2000e-5(e)(3)(A)). "One effect of the Ledbetter Act is to harmonize more closely the concept of timeliness under the EPA and Title VII." Id.[10] Thus, "[i]f an incident occurred more than 300 days before the filing of the plaintiff's EEOC charge, it can be raised in a subsequent lawsuit only if it were part of a continuing violation, and at least one act in that violation occurred within the 300-day statute of limitations." Balas v. Huntington Ingalls Indus., Inc., No. 2:11cv347, 2011 U.S. Dist. LEXIS 110138 at **6-7 (E.D. Va. Sept. 26, 2011) (citing AMTRAK v. Morgan, 536 U.S. 101, 117 (2002)).

Defendants assert that Plaintiff was required to "file his charge of discrimination [with the EEOC] within three hundred (300) days of an adverse employment action." Defs.' Br. Supp. Mot. to Dismiss at 4, ECF No. 25. Acknowledging that the Lilly Ledbetter Fair Pay Act "permits the plaintiff to allege

VII begins when the "discriminatory pay decision was made," Ledbetter, 550 U.S. at 629, and that "the period did not start again each time the employer issued a new paycheck," 1 Lindemann, supra, at 19-74.

[10] The Lilly Ledbetter Fair Pay Act "also amended the ADEA, the Rehabilitation Act of 1973, and the ADA [Americans with Disabilities Act of 1990], but not the EPA, which does not present the same timeliness issue because there is no charge filing requirement under that statute." 1 Lindemann, supra, at 19-74.

41

discriminatory pay decisions before the charging period [and] then demonstrate the effect of such decisions on current pay," Defendants argue that Plaintiff's Title VII action is barred by the statute of limitations because Plaintiff "makes no mention of discriminatory pay decisions." Defs.' Reply Br. at 3, ECF No. 29. It appears that Plaintiff misunderstands Defendants' statute of limitations argument, however, because he responds that his Second Amended Complaint "allege[s] acts or omissions as late as July, 2012 that could be interpreted as a compensation decision." Pl.'s Br. in Opp'n at 3, ECF No. 28.

Although Plaintiff did not provide in his EEOC charge specific dates of his allegedly discriminatory paychecks, he indicated that the alleged discrimination occurred between April 1, 2008 and December 8, 2011, the date Plaintiff filed his EEOC charge. EEOC Charge, ECF No. 14-1. Plaintiff checked the box indicating a "continuing action," and complained that, "on the basis of sex (male) and age I continue to be paid unequal wages than younger and female employees of the University." Id. (emphasis added). Plaintiff's Second Amended Complaint indicates that he received a right-to-sue letter from the EEOC on December 21, 2012, Pl's Second Am. Compl. ¶ 12, ECF No. 23, and he filed his Complaint in this Court on March 21, 2013. Accordingly, although Plaintiff's EEOC charge appears to allege compensation decisions made outside of the 300-day charging

period, it also alleges a "continuing violation" and appears to allege "at least one act in that violation occurr[ing] within the 300-day statute of limitations." Balas, 2011 U.S. Dist. LEXIS 110138 at \*\*6-7. Because the Court cannot determine from Plaintiff's EEOC charge or his Second Amended Complaint whether Plaintiff's EEOC charge was filed untimely,[11] the Court **DENIES** Defendants' motion to dismiss Plaintiff's Title VII sex discrimination claims based on the statute of limitations.

### c. Sufficiency of Pleading

The Court now considers whether Plaintiff's Second Amended Complaint sufficiently alleges a Title VII sex discrimination claim "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Plaintiff, relying on the facts alleged in his EPA claim, asserts that the alleged "violations of the Equal Pay Act are, ipso facto, violations of Title VII." Pl.'s Second Am. Compl. ¶ 19, ECF No. 23. However, "[a]lthough EPA and Title VII claims often are raised together in the same suit, there are many key differences between the two laws." 1 Lindemann, supra, at 19-76. For example, "'[d]iscriminatory intent is not an element of a claim under the [Equal Pay] Act.'" Brewster, 788 F.2d at 993 n.13 (quoting Sinclair v. Auto. Club of Okla., Inc.,

---

[11] "Filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

733 F.2d 726, 729 (10th Cir. 1984)); see also Diamond v. T. Rowe Price Assocs., 852 F. Supp. 372, 389 (D. Md. 1994) (observing that the EPA "establishes a form of strict liability" because a plaintiff need not "prove that the employer consciously decided to pay the plaintiff unequal wages because of her gender"). Rather, a plaintiff alleging discrimination under Title VII must plead facts allowing the Court to infer that his employer discriminated against him, "'with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex.'" Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 283 (4th Cir. 2004) (en banc) (emphasis in original) (quoting 42 U.S.C. § 2000e-2(a)(1)); see also Diamond, 852 F. Supp. at 289 n.80 (noting that "intent is relevant" under Title VII, where the "plaintiff must ultimately prove that the challenged employment practices were the product of conscious discrimination").

Plaintiff insists that his Second Amended Complaint sufficiently "allege[s] facts to support a conclusion of intentional discrimination," Pl.'s Br. in Opp'n at 2, ECF No. 28. In support of such conclusion, Plaintiff points to his allegations that "NSU promised cooperation and information on the salary disparities issue, and then reneged," and that "the President, the Director of Human Resources, and the Board all refused to meet with [Plaintiff] to discuss the salary

44

inequities issue." Id. at 2-3. Plaintiff also alleges that "it is not implausible that the University supplied faulty and incorrect data to the Faculty Committee in order to conceal a discriminatory purpose." Id. at 2 (emphasis added).

To survive a motion to dismiss, Plaintiff's Second Amended Complaint must plead enough facts to show that his claim is "plausible on its face." Twombly, 550 U.S. at 555. However, the Court cannot reasonably infer from Plaintiff's assertions that his sex "played a role in the employer's decision-making process [regarding his salary] and had an influence on the outcome." Merritt, 615 F. Supp. 2d at 445. Plaintiff's allegations regarding Defendants' unwillingness to engage with Plaintiff in his salary battle fail to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Indeed, even if NSU had cooperated, conducted a salary comparison study, and provided Plaintiff with data reflecting a discrepancy in male and female salaries, as Plaintiff alleges in paragraph 11 of his Second Amended Complaint that NSU promised to do, such data would not prove that NSU intended to pay Plaintiff a lower salary because of his sex. Unlike in disparate impact claims, "'[p]roof of discriminatory motive is critical' in disparate treatment cases." Merritt, 615 F. Supp. 2d at 445 (quoting Hazen Paper, 507 U.S. at 610). Plaintiff alleges no facts in his Second Amended Complaint allowing the

Court to reasonably infer that Defendants discriminated against him with respect to his salary "because of [his] sex." Hill, 354 F.3d at 283. Accordingly, because Plaintiff has done "nothing more than state that he was in a protected class and that he suffered adverse employment decisions," Carpenter v. Cnty. Sch. Bd., 107 F. App'x 351, 352-53 (4th Cir. 2004), his Title VII sex discrimination claim is **DISMISSED**.[12]

## 4. ADEA Age Discrimination

The Court next considers whether Plaintiff has alleged his ADEA claim against a proper defendant. In its February 13, 2014 Opinion and Order, the Court granted Plaintiff's request for leave to amend his Complaint for the "purpose of inserting the President of Norfolk State University, in his individual capacity, as a Defendant." Earl, 2014 U.S. Dist. LEXIS 18583, at *15. Defendants argue that the Court still lacks subject matter jurisdiction over Plaintiff's ADEA claim because Plaintiff filed his ADEA claim against Dr. Atwater, the former President of NSU, who is not a proper defendant and, therefore, immune from suit. Plaintiff makes no argument in his responsive brief regarding his ADEA claim, and does not request leave of

---

[12] Even if the Court did not lack subject matter jurisdiction over Plaintiff's Title VII race discrimination disparate treatment claim, such claim would likewise be dismissed for failing to sufficiently plead that Plaintiff's salary was lower "because of [his race]." Hill, 354 F.3d at 283.

46

Court to amend his Second Amended Complaint in the event that
the Court agrees with Defendants.

## a. Subject Matter Jurisdiction/Exhaustion of Administrative Remedies

The Court must first consider whether Plaintiff exhausted
his administrative remedies before filing his ADEA disparate
treatment claim of age discrimination in this Court.
Plaintiff's Second Amended Complaint asserts that Defendants
"discriminat[ed] against its aged (over 40) faculty in terms of
salary, in violation of the ADEA," specifically alleging that
"his salary was so woefully inadequate," compared to "younger
faculty." Pl.'s Second Am. Compl. ¶¶ 12, 16, ECF No. 23. Thus,
to the extent that Plaintiff alleges that his age "played a role
in the employer's decision-making process and had an influence
on the outcome, the proper claim is disparate treatment."
Merritt, 615 F. Supp. 2d at 445. Plaintiff's EEOC charge, in
which Plaintiff stated, "I believe that on the basis of . . .
age I continue to be paid unequal wages than younger . . .
employees," EEOC Charge, ECF No. 14-1, also alleged that
Plaintiff's age "played a role in [NSU's] decision-making
process" regarding his salary "and had an influence on the
outcome," Merritt, 615 F. Supp. 2d at 445. Thus, both
Plaintiff's EEOC charge and his Second Amended Complaint advance
a claim of disparate treatment because they "focus[] on the

47

treatment that [Plaintiff] received at the hands of [Defendants]," Chamblee, 2014 U.S. Dist. LEXIS 50726, at **16-17. Accordingly, the Court finds that Plaintiff sufficiently exhausted his administrative remedies with respect to his ADEA age discrimination disparate treatment claim.

### b. Subject Matter Jurisdiction/Eleventh Amendment Immunity

The Court next considers whether Plaintiff failed to name a proper defendant, thus depriving the Court of subject matter jurisdiction. Plaintiff seeks a declaratory judgment, declaring Dr. Atwater, individually, "in violation of ADEA."[13] Pl.'s Second Am. Compl. at 15, ECF No. 23. Plaintiff also seeks prospective injunctive relief "[e]njoining the offending practices," id., namely, the "discriminatory practices and policies" where "older faculty are treated unequally in terms of salaries," id. at ¶ 20, and the PTR policy, which Plaintiff contends "has a discriminatory impact on older faculty," id. at ¶ 16. Plaintiff states that he brings his ADEA claim "solely against Dr. Tony Atwater, in his individual capacity," because Dr. Atwater "enforced the [PTR] policy" and "refused to discuss

---

[13] In its February 13, 2014 Opinion and Order, the Court granted Plaintiff's request for leave to amend his Complaint for the "purpose of inserting the President of Norfolk State University, in his individual capacity, as a Defendant." Earl, 2014 U.S. Dist. LEXIS 18583, at *15 (E.D. Va. Feb. 13, 2014) (citation omitted). However, rather than naming the current president of NSU as a defendant, Plaintiff named "Dr. Tony Atwater, (former Pres. of Norfolk State Univ), individually," as a defendant in this case. Pl.'s Second Am. Compl. at 1, ECF No. 23 (emphasis added).

reform with faculty who sought out his counsel and assistance . . . [in] cur[ing] inequities in faculty salaries." Id.

The Eleventh Amendment to the United States Constitution provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Supreme Court has held that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State,'" Constantine, 411 F.3d at 479 (quoting Edelman v. Jordan, 415 U.S. 651, 663 (1974)), and that "immunity also extends to 'state agents and state instrumentalities,'" Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248 (4th Cir. 2012) (quoting Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997)).

"The doctrine of Ex parte Young, which ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law, is regarded as carving out a necessary exception to Eleventh Amendment immunity." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). However, "the exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the

49

past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." Id. (citing Green v. Mansour, 474 U.S. 64, 68 (1985); Cory v. White, 457 U.S. 85 (1982)). Therefore, a plaintiff may avoid the Eleventh Amendment bar to suit and proceed against state officials "in their official capacities," only if his complaint "alleges an ongoing violation of federal law" and "seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002); see also Va. Office for Prot. & Advocacy v. Stewart, 131 S. Ct. 1632, 1639, (2011).

To determine the applicability of the Ex parte Young exception, "a court need only conduct a straightforward inquiry into whether [the] complaint [1] alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." Verizon Md., 535 U.S. at 645. Generally, "the inquiry into whether suit lies under Ex parte Young does not include an analysis of the merits of the claim." Id. at 646 (citing Idaho v. Coeur d' Alene Tribe of Idaho, 521 U.S. 261, 281 (1997) ("An allegation of an ongoing violation of federal law . . . is ordinarily sufficient.")). However, when considering a motion to dismiss, the reviewing court must also determine whether the plaintiff's complaint alleges facts that, if true, demonstrate an ongoing violation of federal law. See

S.C. Wildlife Fed'n v. Limehouse, 549 F.3d 324, 332 (4th Cir. 2008) ("For purposes of Eleventh Amendment analysis, it is sufficient to determine that [the plaintiff] alleges facts that, if proven, would violate federal law and that the requested relief is prospective."); Calderon v. Kan. Dep't of Soc. & Rehab. Servs., 181 F.3d 1180, 1183 (10th Cir. 1999) (observing that the "threshold question" is whether the complaint gives "any indication that [plaintiff] might be entitled to injunctive relief for ongoing federal . . . violations by state officials").

### i. Plaintiff's Claim against Dr. Atwater, Individually

The Court must first consider whether Plaintiff's ADEA claim is advanced against Dr. Atwater in his personal or official capacity. Plaintiff asserts that he brings his ADEA claim "solely against Dr. Tony Atwater, in his individual capacity," Pl.'s Second Am. Compl. ¶ 16, ECF No. 23, but does not expressly indicate whether he is suing Dr. Atwater in his individual "personal" or "official" capacity.

Relief "against an official in his personal capacity binds only a particular office holder, not his successor, and ordinarily is devoid of operational significance once the named defendant leaves office." 1 Lindemann, supra, at 22-57. On the other hand, relief "directed at an official in his official capacity binds whoever holds the position in question; if the

named defendant leaves office, then his successor is automatically substituted." Id. at 22-56 (citing, inter alia, Fed. R. Civ. P. 25(d)(1)). Out of an abundance of caution, the Court assumes, without deciding, that Plaintiff's ADEA claim is against Dr. Atwater in his official capacity, as any declaratory or injunctive relief against Dr. Atwater in his personal capacity would be "devoid of operational significance." Id.[14] Accordingly, the Court will refer to "the president of NSU" rather than "Dr. Tony Atwater" in its analysis of Plaintiff's ADEA claim.

## ii. Plaintiff's Requested Relief

The Court next considers whether Plaintiff's ADEA claim "alleges an ongoing violation of federal law" and "seeks relief properly characterized as prospective." Verizon Md., 535 U.S. at 645. Plaintiff requests a declaratory judgment "[d]eclaring [the president of NSU] in violation of ADEA," and injunctive relief "[e]njoining the offending practices." Pl.'s Second Am. Compl. at 15, ECF No. 23. The Fourth Circuit has held that such relief is "properly characterized as prospective," Verizon Md., 535 U.S. at 645, because the request for "injunctive relief is a

---

[14] Plaintiff's Second Amended Complaint also seeks "[c]ompensatory damages . . . for retaliation, and retaliatory hostile environment, under ADEA, Title VII, and the EPA." Pl.'s Second Am. Compl. at 16, ECF No. 23. However, because the Court dismisses Plaintiff's retaliation claim, as discussed below, the Court need not address Dr. Atwater's capacity with respect to Plaintiff's request for compensatory damages under the ADEA.

prospective claim against an action that would violate federal law," and the requested declaratory relief "is simply the determination that past actions by the Defendants did not comply with [the ADEA]," and "adds no additional burden on the Defendants other than the injunctive relief," Limehouse, 549 F.3d at 332. Cf. Green, 474 U.S. at 73 (denying declaratory judgment where there was "no claimed continuing violation of federal law, and therefore no occasion to issue an injunction").

Plaintiff's ADEA claim alleges "continued" violations of the ADEA, Pl.'s Second Am. Compl. ¶ 20, ECF No. 23, which, on its face appears to "allege[] an ongoing violation of federal law," Verizon Md., 535 U.S. at 645. However, before concluding that the Eleventh Amendment does not bar Plaintiff's claim, the Court must determine whether Plaintiff's ADEA claim "alleges facts that, if proven, would violate federal law." Limehouse, 549 F.3d at 332.

### iii. Ongoing Violations of Federal Law

Before continuing the analysis of Plaintiff's ADEA claim, the Court acknowledges that the question of whether Plaintiff sufficiently alleges an ongoing violation of federal law could be "confused with the question whether the complaint states a cause of action." Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co., 341 U.S. 246, 249 (1951). The Fourth Circuit has previously instructed that, "[w]hen a defendant moves for

dismissal both on lack of subject matter jurisdiction grounds, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, Fed. R. Civ. P. 12 (b)(6), 'the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case.'" Plumer v. Maryland, 915 F.2d 927, 932 (4th Cir. 1990) (quoting Daigle v. Opelousas Health Care, Inc., 774 F.2d 1344, 1347 (5th Cir. 1985)). "The Fourth Circuit has not resolved whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6)." Haley v. Va. Dep't of Health, 27 Am. Disabilities Cas. (BNA) 301, 2012 U.S. Dist. LEXIS 161728, at *5 n.2 (W.D. Va. Nov. 13, 2012) (citing Andrews v. Daw, 201 F.3d 521, 525 n.2 (4th Cir. 2000)). "The recent trend, however, appears to treat Eleventh Amendment Immunity motions under Rule 12(b)(1)." Id.

Here, Defendants do not cite either Rule 12(b)(1) or Rule 12(b)(6) in their Third Motion to Dismiss or supporting brief, but argue that "this Court lacks jurisdiction over [Plaintiff's] cause of action for age discrimination under the ADEA." Defs.' Br. Supp. Mot. to Dismiss at 2, ECF No. 25 (capitalization omitted). Because Defendants do not contend that Plaintiff's ADEA claim fails to allege facts "upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), and because the result would

be the same under either Rule 12(b)(1) or Rule 12(b)(6),[15] the Court proceeds under Rule 12(b)(1) to "determine whether the Complaint 'fails to allege facts upon which subject matter jurisdiction can be based.'" Haley, 2012 U.S. Dist. LEXIS 161728, at *6 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)); see also Limehouse, 549 F.3d at 332. As discussed, Plaintiff's only surviving claim under the ADEA is a disparate treatment claim of wage discrimination, as Plaintiff failed to exhaust his administrative remedies with respect to any disparate impact claims or claims regarding the PTR policy. Thus, the Court considers only whether Plaintiff sufficiently alleges wage discrimination under the ADEA based upon a theory of disparate treatment.

The ADEA forbids an employer from discriminating "'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.'" Hill, 354 F.3d at 283 (emphasis in original) (quoting 29 U.S.C. § 623 (a)(1)). Plaintiff sufficiently pleads that he is a member of a protected class and that members outside the protected class earn a higher salary

---

[15] "When the defendant makes a facial challenge to subject matter jurisdiction under Rule 12(b)(1), the plaintiff is afforded 'the same procedural protection as he would receive under a Rule 12(b)(6) consideration,' such that 'the facts alleged in the complaint are assumed to be true.'" Haley, 2012 U.S. Dist. LEXIS 161728, at *6 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)).

than him. However, Plaintiff fails to factually allege that his age is the cause of his lower salary. See Carpenter, 107 F. App'x at 352-53 (finding plaintiff "failed to allege sufficient facts in support of his ADEA claim to defeat a motion to dismiss" where he "did nothing more than state that he was in a protected class and that he suffered adverse employment decisions"). Indeed, Plaintiff's ADEA claim is wholly based upon "statistical analyses of the sample data," Pl.'s Second Am. Compl. ¶ 16, ECF No. 23, and it is well-settled in the Fourth Circuit that "statistics alone cannot establish a prima facie case of individual disparate treatment." Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 761 (4th Cir. 1998).

Recognizing that a plaintiff is required to "state all the elements of [his] claim," Bass, 324 F.3d at 765 (emphasis added), Plaintiff insists that his Second Amended Complaint sufficiently "allege[s] facts to support a conclusion of intentional discrimination," Pl.'s Br. in Opp'n at 2, ECF No. 28 (discussing Plaintiff's Title VII claims). However, as discussed with respect to Plaintiff's Title VII claims, Plaintiff's allegations regarding Defendants' unwillingness to engage with Plaintiff in his salary battle fail to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Because Plaintiff fails to sufficiently allege any "'discriminatory motive,'" which is "'critical' in disparate

treatment cases," Merritt, 615 F. Supp. 2d at 445 (quoting Hazen
Paper, 507 U.S. at 610), the Court cannot reasonably infer that
Plaintiff received a lower salary "because of [his age]," Hill,
354 F.3d at 283.  Accordingly, Plaintiff has failed to allege
"an ongoing violation of federal law," Verizon Md., 535 U.S. at
645, and is therefore precluded by the Eleventh Amendment from
proceeding with his ADEA claim.  Plaintiff's ADEA claim is
therefore **DISMISSED** for lack of subject matter jurisdiction.

### 5. Retaliation

The Court next considers Defendants' arguments surrounding
Plaintiff's retaliation claim.  Defendants assert that Plaintiff
alleges the same retaliatory acts that the Court previously
"rejected . . . as not stating a prima facie case."  Defs.' Br.
Supp. Mot. to Dismiss at 6, ECF No. 25.  Furthermore, Defendants
contend, because the Court also found that Plaintiff had
"fail[ed] to exhaust his administrative remedies before the
EEOC" with respect to his retaliation claim, such claim "must
again be dismissed."  Id.  As previously noted, Plaintiff did
not discuss his retaliation claim in his responsive brief.

### a. Subject Matter Jurisdiction/Exhaustion of Administrative Remedies

In its February 13, 2014 Opinion and Order, the Court
observed that "Plaintiff did not check the 'Retaliation' box on
the EEOC form," and did not factually "'raise anything remotely

resembling a claim for retaliation in his charge to the EEOC.'"
Earl, 2014 U.S. Dist. LEXIS 18583, at *27 (quoting Wright v.
Carfax, Inc., 120 Fair Empl. Prac. Cas. (BNA) 1723, 2013 U.S.
Dist. LEXIS 170419, at *15 (E.D. Va. Dec. 3, 2013)).
Acknowledging that "'a plaintiff may raise [a] retaliation claim
for the first time in federal court' when the retaliation is
'for filing the first charge,'" id. at *25 (quoting Nealon, 958
F.2d at 590), the Court noted that "this exception to the
general rule does not apply when 'the alleged retaliation
occurred before the plaintiff filed an administrative
complaint,'" id. (quoting Wright, 2013 U.S. Dist. LEXIS 170419,
at *13. Recognizing that it was "at least conceivable that
Plaintiff could set forth sufficient facts to support his . . .
retaliation claim[]," id. at *33, particularly with respect to
"acts occurring after the [December 8, 2011] filing of his
charge with the EEOC," id. at *28, the Court granted Plaintiff
leave to again amend his Complaint.

Plaintiff's Second Amended Complaint lists the same seven
allegedly retaliatory acts alleged in Plaintiff's Amended
Complaint. As discussed in its February 13, 2014 Opinion and
Order, the Court does not consider the acts that "occurred
before the plaintiff filed an administrative complaint," Wright,
2013 U.S. Dist. LEXIS 170419, at *13, because Plaintiff's
failure "to exhaust administrative remedies . . . deprives the

[Court] of subject matter jurisdiction over the claim," Jones, 551 F.3d at 300. However, the Court will again address the remaining acts allegedly occurring after December 8, 2011.

### b. Sufficiency of Pleading

"To state a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." Okoli v. Baltimore, 648 F.3d 216, 223 (4th Cir. 2011) (quoting Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997)).

"An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998)). The Supreme Court has held that, in the retaliation context, an adverse employment action need not affect an employee's "terms or conditions of employment." Burlington N. & Sante Fe Ry. v. White, 548 U.S. 53, 70 (2006). However, "a plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which

in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" Id. at 68 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1217-18 (D.C. Cir. 2006))). The Supreme Court explained that a retaliation plaintiff must prove "material adversity because . . . it is important to separate significant from trivial harms." Id. (emphasis in original). An employer's action is not materially adverse if it amounts to "petty slights or minor annoyances that often take place at work and that all employees experience." Id. To be sure, an employee is not protected "from all retaliation, but from retaliation that produces an injury or harm." Id. at 67.

Here, Plaintiff's Second Amended Complaint asserts, at most, three allegedly retaliatory acts occurring after, and resulting from, his filing an EEOC charge on December 8, 2011. Plaintiff first claims that "he was denied (all of 2011, and 2012) the right to present an oral report, as Faculty Senate president, at meetings of the Board of Visitors." Pl.'s Second Am. Compl. ¶ 21, ECF No. 23. Second, Plaintiff alleges that, in December of 2011, "his reports to the Board of Visitors were omitted, without explanation . . . from the BOV meeting handbook." Id. Third, Plaintiff claims that, on July 3, 2012, "the president of the University, Dr. Atwater, as well as the University Director of Human Resources, and the Board of

60

Visitors refused . . . to meet with [Plaintiff], or even to respond to his communications." Id.[16] Plaintiff alleges that "[t]hese actions had the effect of subjecting the Plaintiff to public embarrassment and humiliation, feelings of insecurity in his job, public ridicule, belittlement, and forced him to operate in an environment that was hostile and filled with pervasive intimidation." Id. Plaintiff further asserts that the "insult" was "sufficiently severe as to significantly alter the conditions of his employment, creating an uncomfortable and threatening working environment." Id.

Even under the more relaxed retaliation standard set forth in White, none of the acts of which Plaintiff complains rise to the level of an adverse employment action. Plaintiff does not allege that he was disciplined, or that he was reassigned, or that he suffered any change in his compensation or benefits. Nor would any of Defendants' actions "dissuade[] a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (noting that "'courts have held that personality conflicts at work that generate antipathy' and 'snubbing by supervisors and co-workers' are not actionable" (quoting 1 B.

---

[16] Plaintiff additionally asserts that "a tenured faculty member . . . (who had a close association and ties with Dr. Earl and his efforts) was summarily fired, in 2012," causing "the intimidation level" to rise and "the faculty morale" to sink. Pl.'s Second Am. Compl. ¶ 21, ECF No. 23. Plaintiff does not allege that the firing of his associate was a retaliatory act against Plaintiff, nor does the Court consider it as such in the absence of such a factual assertion.

61

Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996))); see also Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 189 (4th Cir. 2004) (finding that neither "being excluded from certain meetings and emails" nor being "ostracized by certain employees" rose "to the level of an adverse employment action"); Brockman v. Snow, 217 F. App'x 201, 206 (4th Cir. 2007) (finding that "fail[ing] to respond to [employee's] phone calls . . . do[es] not approach materiality").

It is obvious that Plaintiff believes that Defendants treated him poorly because of "his advocacy for faculty rights." Pl.'s Second Am. Compl. ¶ 21, ECF No. 23. However, Plaintiff simply has not alleged any materially adverse employment actions taken against him in retaliation for his advocacy, and the law simply "does not set forth a general civility code for the American workplace." White, 548 U.S. at 68. Accordingly, because the Court lacks subject matter jurisdiction over the allegedly retaliatory acts occurring before Plaintiff filed his EEOC charge on December 8, 2011, and because Plaintiff fails to allege any adverse employment actions occurring after December 8, 2011, in retaliation for his participation in a protected activity, Plaintiff's retaliation claim is DISMISSED.

## E. Class/Collective Action

The Court finally considers Defendants' assertion that Plaintiff has failed to timely "move for certification as a class action under Federal Rule[] of Civil Procedure, Rule 23." Defs.' Reply Br. at 1, ECF No. 29. Because Plaintiff's only surviving claim is his EPA claim, the Court discusses only whether Plaintiff can proceed on his EPA claim as a collective action.

As Defendants point out, Plaintiff has not yet filed a motion for certification of his collective action. Because Plaintiff's EPA claim is the single surviving claim in Plaintiff's Second Amended Complaint, Plaintiff may seek to assert a collective action only on that claim, "pursuant to 29 U.S.C. § 216(b)) (the Fair Labor Standards Act collective action provision)." Pl.'s Second Am. Compl. ¶ 8, ECF No. 23. Although 29 U.S.C. § 216(b) does not mandate a certification procedure like the one set out in Federal Rule of Civil Procedure 23, a plaintiff "must first seek conditional certification and then if granted, discovery is conducted to allow the court to determine if final certification is appropriate." Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 558 n.1 (E.D. Va. 2006). Although "the Fourth Circuit has not settled on a test for conditional certification in an FLSA action," it appears that Plaintiff must provide at least "'a modest factual showing

63

sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Purdham v. Fairfax Cnty. Pub. Schs., 629 F. Supp. 2d 544, 548 (E.D. Va. 2009) (quoting Choimbol, 475 F. Supp. 2d at 563).

Plaintiff concedes that his "choice of comparators to aid in support of his allegations [of] an initial individual case for discrimination as it pertained to himself" was obtained from the Mathematics Department, "a sub-population of the larger population of NSU professors." Pl.'s Br. in Opp'n at 1-2, ECF No. 28. To obtain conditional certification, however, Plaintiff will likely need to present facts far beyond his own department "to support [his] allegations that defendant[s] [have] a company-wide policy resulting in potential FLSA violations." Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). Accordingly, if Plaintiff still wishes to proceed as a collective action on his EPA claim, he is advised that he should file a motion for conditional certification, pursuant to 29 U.S.C. § 216(b).

## IV. CONCLUSION

For the reasons stated above, Defendants' Third Motion to Dismiss is **GRANTED, IN PART,** and **DENIED, IN PART.** Specifically, the Court **DISMISSES** Plaintiff's Title VII race discrimination and ADEA age discrimination claims for lack of subject matter

jurisdiction.   The Court **DISMISSES** Plaintiff's Title VII sex discrimination claim because Plaintiff fails to state a claim upon which relief can be granted.   The Court **DISMISSES** Plaintiff's retaliation claim for lack of subject matter jurisdiction with respect to the allegedly retaliatory acts occurring before December 8, 2011, and **DISMISSES** Plaintiff's retaliation claim for failing to state a claim upon which relief can be granted as to the acts occurring after December 8, 2011. The Court **DENIES** Defendants' Third Motion to Dismiss with respect to Plaintiff's EPA disparate treatment claim.   Plaintiff is **ADVISED** to file a clearly-written and factually supported motion for conditional certification if he wishes to proceed on behalf of a class in a collective action on his EPA disparate treatment claim.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 26 , 2014