UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DR. ARCHIE EARL,

      Plaintiff,

v.                                    Civil No.: 2:13cv148

NORFOLK STATE UNIVERSITY,
THE BOARD OF VISITORS OF
NORFOLK STATE UNIVERSITY, and
THE COMMONWEALTH OF VIRGINIA.

      Defendants.

## OPINION AND ORDER

This matter is before the Court on a Motion for Conditional Class Certification and for an Order Authorizing Court Notice to Potential Class Members filed on September 15, 2014 by Dr. Archie Earl ("Plaintiff" or "Earl") in his Equal Pay Act ("EPA") action against Norfolk State University ("NSU"), the Board of Visitors of Norfolk State University, and the Commonwealth of Virginia (collectively "Defendants"). ECF No. 38. After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). For the reasons set forth below, Plaintiff's

Motion for Conditional Class Certification is **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

Plaintiff is a "66 year old, Black, male Associate Professor in the Department of Mathematics at Norfolk State University, a "state supported" university located in "the Commonwealth of Virginia." Pl.'s Second Am. Compl. ¶ 1, ECF No. 23.[2] In 2006, according to Plaintiff's Second Amended Complaint, the Faculty Salary Issues Research Committee ("the Committee") began to study "gross inequities in faculty salaries." Id. ¶ 10. The purpose of the Committee's study was to "advise the NSU administration of its findings, in order that remedial steps could be taken to redress such inequities, if any, as may be uncovered." Id. Plaintiff alleges that the Committee requested the relevant "data from the NSU Human Resources Office," but claims that "the data provided were filled with serious errors that would have led to unreliable results." Id. Plaintiff does

---

[1] In its June 26, 2014 Opinion and Order, the Court set out, in detail, the factual and procedural history of this case. ECF No. 33. Accordingly, the Court sets forth only those facts necessary to resolve the instant motion.

[2] On February 27, 2014, Plaintiff filed two documents titled "Amended Complaint." See ECF Nos. 22-23. The description associated with the first filing states that the Second Amended Complaint is "against Dr. Archie Earl," ECF No. 22, and the second filing is "against All Defendants," ECF No. 23. The documents themselves appearing to be identical, the Court refers to the second filing "against all Defendants" as Plaintiff's Second Amended Complaint. ECF No. 23.

not describe the nature of the alleged errors found in the data. The "Committee then decided to modify its study" to analyze "only sample data" from the Committee members' own departments. Id. ¶ 11.   According to Plaintiff, NSU advised the Committee "that it was preparing its own study of the salary inequities question, promising to reveal the results of this study so that the matter may be resolved reasonably, amicably, and with dispatch." Id.

Meanwhile, "based on the Committee's ongoing analysis," Plaintiff asserts that he discovered that his own salary was "woefully inadequate" compared to "recent hires, and white faculty, and younger faculty, and female faculty," although Plaintiff alleges that "he was at least as qualified" and that "the responsibilities of the job[s] were essentially equivalent." Id. ¶ 12.   "[U]sing inferential statistical analyses" of the sample data, the Committee determined that NSU was discriminating against "[b]lack faculty," "men," and "aged (over 40) faculty." Id. ¶¶ 14-16.  However, Plaintiff does not provide the results of the Committee's "inferential statistical analyses" or otherwise describe the results of the study, except with respect to his own salary. Id.

Among other causes of action, in his Second Amended Complaint, Plaintiff alleged that Defendants have violated the EPA by creating an "inequity in pay as between female faculty at

3

NSU, for equal work on jobs requiring equal skill, effort and responsibility . . . ."  Id. ¶ 19.  In addition, Plaintiff has sought to pursue his EPA action as a collective action pursuant to 29 U.S.C. § 216(b).  Id. ¶ 8.

On June 26, 2014, the Court issued an Opinion and Order dismissing all of Plaintiff's claims except his EPA claim.  ECF No. 33.  In that Opinion and Order, the Court advised him that, "if Plaintiff still wishes to proceed as a collective action on his EPA claim . . . he should file a motion for conditional certification, pursuant to 29 U.S.C. § 216(b)."  Id. at 64.  The Court noted that "[t]o obtain conditional certification, however, Plaintiff will likely need to present facts far beyond his own department 'to support [his] allegations that defendant[s] [have] a company-wide policy resulting in potential FLSA violations.'"  Id. (quoting Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002)).

On September 15, 2014, Plaintiff moved for conditional class certification and sought an order "directing [NSU] to provide to Plaintiff, within fourteen days, a list in electronic database form, with home addresses and contact information (including telephone numbers and email addresses) of all salaried male teaching faculty who were employed by NSU for some period of time during the last three years" and to provide notice "in conspicuous places on campus, including the NSU

4

website" to potential class members.  Pl.'s Mot. for Conditional
Class Certification at 1-2.  In support of his motion, Plaintiff
submitted affidavits of three male teaching faculty belonging to
three different NSU departments, see Pl.'s Mot. for Conditional
Class Certification Exs. 4-6, ECF Nos. 38-4, 38-5, 38-6.  The
affidavits of Drs. Abatena and Agyei are practically identical
and state, in pertinent part, that:

> I . . . grant [Plaintiff] permission to file a class
> action lawsuit, on my behalf, against [Defendants],
> for discriminating against me by violating the Federal
> Equal Pay Amendment [sic] (EPA), by paying me a lower
> salary than certain female members of my department,
> school, or university . . . sometime during the period
> of September 2003 thru [sic] March 2013.

Id.  Exs.  4-5.    Dr.  Meshesha's  affidavit  similarly  grants
Plaintiff permission to file a class action against Defendants
on  Dr.  Meshesha's  behalf;  however,  it  only  states  that
Defendants "discriminat[ed] against me by violating the Federal
Equal Pay Amendment [sic] (EPA), by paying me a lower salary
than certain faculty members of other departments, schools, or
universities as prohibited by the Federal EPA."  Id. Ex. 3.

    In  his  brief  supporting  the  instant  motion,  Plaintiff
contends  that  he  has  made  a  sufficient  factual  showing  to
warrant  conditional  certification  based  on  allegations  in  the
Second Amended Complaint, the affidavits attached to his motion,
and  the  fact  that  "NSU's  compensation  practice  or  policy  is
formulated  and  executed  by  the  Administration  for  the  entire

teaching faculty." Pl.'s Br. Supp. Mot. for Conditional Class Certification at 2, ECF No. 39. More specifically, Plaintiff contends that the Second Amended Complaint's allegations concerning "statistical analyses done by, and in, various departments of the University" indicate the existence of a class of persons similarly situated to Plaintiff. See id. In addition, to support his contention that "NSU's compensation practice or policy is formulated by the Administration for the entire teaching faculty," Plaintiff alleges that "[a]ll faculty contracts are approved by, and signed by, the University President or Vice-President for Academic Affairs/Provost" and that NSU applies "the same compensation policy and practice" to teaching faculty in NSU's "ancillary sites" as it does to teaching faculty at its central, Park Avenue facility. See id. at 3. Plaintiff also argues that, in the event the Court conditionally certifies the collective action, it would not be unreasonably burdensome to require Defendants to "provide a list of potential class members in a computer datafile format." Id. at 5.

On September 29, 2014, Defendants responded to Plaintiff's motion. Def.'s Opp'n Br. to Pl.'s Mot. for Conditional Class Certification, ECF No. 40. Defendants argue that Plaintiff has failed to present sufficient facts to warrant conditional certification of an EPA collective action because professors

outside Plaintiff's department are not similarly situated to him.  See id. at 3-4.  Defendants contend that, to the extent a person outside Plaintiff's department could not serve as a comparator for EPA purposes, male teaching faculty in departments outside of Plaintiff's department are not similarly situated to Plaintiff.  See id. at 2-3.  Defendants have attached NSU's faculty performance policy to their brief, Def.'s Opp'n Br. to Pl.'s Mot. for Conditional Class Certification Ex. A, ECF No. 40-1, and contend that the research, professional development and service, university service, and community service evaluation criteria will involve considerations that are not "uniform among NSU's departments."  Id. at 4.

On October 2, 2014, Plaintiff filed a rebuttal brief reiterating his contention that he has presented a sufficient factual basis to support conditional certification.  Pl.'s Br. in Rebuttal to Def.'s Resp. Opposing Conditional Class Certification, ECF No. 41.  Plaintiff argues that the affidavits of three professors outside of his department establish that potential claimants exist, and that comparators in each of such departments also exist.  Thus, the parties have fully briefed the matter and it is now ripe for disposition.

## II. STANDARD OF REVIEW

The EPA amended the Fair Labor Standards Act ("FLSA") to proscribe an employer from discriminating:

within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d). "'As part of the FLSA, the EPA utilizes the FLSA's enforcement mechanisms and employs its definitional provisions.'" Kassman v. KPMG LLP, 2014 WL 3298884, No. 11 Civ. 03743(LGS), at *4 (S.D.N.Y. July 8, 2014) (published) (quoting Anderson v. State Univ. of N.Y., 169 F.3d 117, 119 (2d Cir. 1999), vacated on other grounds, 528 U.S. 1111 (2000)). The FLSA's enforcement mechanisms include a provision authorizing collective actions. See Houston v. URS Corp., 591 F. Supp. 2d 827, 831 (E.D. Va. 2008). Collective actions "are intended to serve the important objectives embodied in the FLSA by facilitating a resolution in a single proceeding of claims stemming from common issues of law and fact, and to aid in the vindication of plaintiffs' rights by lowering the individuals' costs by pooling claims and resources." Id. (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170-71 (1989)).

The FLSA's collective action provision provides:

8

> An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Thus, collective action "certification under Section 216(b) requires (1) that the plaintiffs are 'similarly situated,' and (2) that the plaintiffs included in the class 'opt-in' by filing with the court consents to join the suit." Houston, 591 F. Supp. 2d at 831 (citing Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 562 (E.D. Va. 2006)); cf. Jarvaise v. Rand Corp., 212 F.R.D. 1, 4 (D.D.C. 2002) (stating that "[t]he only requirement for a collective action under the Equal Pay Act is that the represented employees be similarly situated to the representative employees . . . ."). "[T]o expedite the manner in which collective actions under the FLSA are assembled, 'district courts have discretion in appropriate cases to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" Purdham v. Faifax Cnty. Pub. Sch., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (omissions in original) (quoting Hoffman-La Roche, 493 U.S. at 169). This notice stage of a collective action is often referred to as the "conditional certification" stage. See id.

Although the Fourth Circuit has not yet considered the issue, "'[c]ourts generally follow a two-stage approach when deciding whether the named plaintiff[] in an FLSA action [is] similarly situated to other potential plaintiffs.'" Id. (citation omitted) (quoting Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); see also, e.g., Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012) (affirming the use of a two-step approach); Morgan v. family Dollar Stores, Inc., 551 F.3d 1233, 1260 (11th Cir. 2008) (noting that "we have sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase"); 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1807, at 487 (3d ed. 2005).

At the first stage, the conditional certification stage, "the court determines whether there is sufficient evidence to reasonably determine that the proposed class members are similarly situated enough to conditionally certify the collective action and provide potential class members with initial notice of the action and the opportunity to 'opt-in.'" Houston, 591 F. Supp. 2d at 831 (citations omitted). Put differently, "the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Myers v. Hertz Corp., 624 F.3d 537, 555 (2d Cir. 2010)

(emphasis in original). In considering whether a plaintiff has met his burden at the first stage, courts apply a "'fairly lenient standard.'" Houston, 591 F. Supp. 2d at 831 (quoting Choimbol, 475 F. Supp. 2d at 562).[3] Although "the Fourth Circuit has not settled on a test for conditional certification in an FLSA action," it appears that Plaintiff must provide at least "'a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Purdham, 629 F. Supp. 2d at 548 (quoting Choimbol, 475 F. Supp. 2d at 563). However, "'[m]ere allegations will not suffice; some factual evidence is necessary.'" Id. (quoting Bernard, 231 F. Supp. 2d at 435). "[W]here multiple claims can be adjudicated efficiently because they share common underlying facts and do not require substantial individualized determinations for each class member, a court should conditionally certify the proposed class." Id. (citing Houston, 591 F. Supp. 2d at 831-32).

---

[3] See also, e.g., Myers, 624 F.3d at 555 (stating that the standard of proof at the first stage should "remain a low standard of proof"); Morgan, 551 F.3d at 1260-61 (second alteration in original) (internal citations omitted) (noting that "[w]e have described the standard for determining similarity, at this initial stage, as 'not particularly stringent,' 'fairly lenient,' 'flexib[le],' 'not heavy' . . . ."); Byard v. Verizon W. Va., Inc., 287 F.R.D. 365, 369 (N.D. W.Va. 2012); Whalen v. United States, 85 Fed. Cl. 380, 384 (2009) (stating that "[t]he inquiry at this stage is not particularly searching"); Wright et al., supra, § 1807, at 488 (stating that "[i]n the first stage of the certification process, the court may grant conditional certification applying a very lenient burden of proof.").

In addition, at the first stage, the Court has the "discretion, in appropriate cases, to facilitate notice to potential class members by allowing discovery of the names and addresses of potential plaintiffs or by some other appropriate action." Houston, 591 F. Supp. 2d at 832 (citations omitted). Nonetheless, "[t]his discretion is not unfettered; the court must assess 'whether this is an appropriate case in which to exercise [its] discretion.'" Id. (quoting Camper v. Home Quality Mgmt. Inc., 200 F.R.D. 516, 519 (D. Md. 2000)).

The second stage, as a general rule, occurs when the defendant files a motion for decertification. "After most of the discovery has taken place and the matter is ready for trial, the defendant can initiate the second stage of inquiry by moving to 'decertify' the class." Purdham, 629 F. Supp. 2d at 547. "At this step, courts apply a heightened, fact-specific standard to the 'similarly-situated' analysis," Houston 591 F. Supp. 2d at 832 (citing Choimbol, 475 F. Supp. 2d at 563), and "the court makes a factual determination as to whether the class is truly 'similarly situated,'" Purdham, 629 F. Supp. 2d at 547 (citing Parker, 492 F. Supp. 2d at 1164).

### III. DISCUSSION

### A. Conditional Certification

In the proposed notice attached to his motion, Plaintiff seeks conditional certification of a class of "[a]ll salaried

male teaching faculty who worked for Norfolk State University at any time during the past three years and so were potentially similarly situated as Plaintiff, Dr. Archie Earl." Pl.'s Mot. for Conditional Class Certification Ex. 7, ECF No. 38-7.[4] For the reasons stated below, in light of the "fairly lenient standard" the Court must apply in deciding this motion, see, e.g., Houston, 591 F. Supp. 2d at 831, the Court concludes that, for the purposes of resolving this motion, Plaintiff has made the "modest factual showing sufficient to demonstrate" that he and all salaried male teaching faculty who worked for NSU at any time during the past three years "together were victims of a common policy or plan that violated the law," see Purdham, 629

---

[4] The Court notes that Plaintiff has not consistently characterized the proposed class of potential plaintiffs in the collective action for which he seeks conditional certification. In Plaintiff's motion, he defines the proposed collective class as "all similarly situated (as Plaintiff) salaried male faculty at Norfolk State University (NSU) who were employed during the past three years." Pl.'s Mot. for Conditional Class Certification at 1. He further states that "[b]y 'similarly situated' we mean that the male faculty member belongs to the proposed collective class, and was paid measurably less than a comparably qualified female faculty member who was teaching under similar working conditions." Id. at 1-2. However, in his brief, Plaintiff refers to the proposed class as consisting of "all those salaried male faculty members that were employed at NSU at some time during the past three years, and were paid measurably less than some female faculty members who were doing the same or similar work, requiring equal or equivalent skill, and under working conditions that were essentially equal or the same." Pl.'s Br. Supp. Mot. for Conditional Class Certification at 3. Both such definitions differ from that stated in the proposed notice attached to Plaintiff's motion. However, to the extent Plaintiff has asked the Court to "approve the Notice as herein proposed," Pl.'s Mot. for Conditional Class Certification at 5, the Court will consider whether to conditionally certify Plaintiff's collective action based on the definition of the class contained in the proposed notice.

F. Supp. 2d at 548, through two affidavits he submitted and the faculty performance policy attached as Exhibit A to Defendants' brief in opposition.

To begin, the Court notes that, alone, Plaintiff's allegations in his Second Amended Complaint and his brief in support of this motion do not provide a sufficient factual basis to conditionally certify a collective action. Plaintiff's Second Amended Complaint contains allegations that statistical analyses demonstrate that NSU "was impermissibly discriminating against men, and in favor of women . . . in violation of the Equal Pay Act." Second Am. Compl. ¶ 15. Likewise, to support the instant motion, Plaintiff's brief states that he "offers the statistical analyses done by, and in, various departments of the University" as reflected in Paragraphs 11 and 15 of the Second Amended Complaint. Pl.'s Br. Supp. Mot. for Conditional Class Certification at 2 (citing Second Am. Compl. ¶¶ 11, 15). In addition, Plaintiff also alleges that "NSU's compensation practice or policy is formulated and executed by the Administration for the entire teaching faculty" and "[a]ll faculty contracts are approved by, and signed by, the University President or Vice-President for Academic Affairs/Provost." Id. at 3. However, although the Court applies a fairly lenient standard in considering Plaintiff's motion, as stated above, "mere allegations will not suffice" to demonstrate the existence

14

of a class of similarly situated potential plaintiffs. See Purdham, 629 F. Supp. 2d at 548. To the extent that Plaintiff has merely alleged, rather than presented evidence of, the existence of statistical analyses suggesting that Defendants have violated the EPA, a single compensation policy for all teaching faculty, and a uniform system for approving faculty contracts, the Court will not consider such allegations in determining whether Plaintiff has made the modest factual showing necessary for the Court to grant his motion.

On the other hand, the evidence of NSU's faculty evaluation policy—that Defendants put into the record when they attached such policy as Exhibit A to their brief in opposition—and the affidavits that Plaintiff submitted, taken together, present a "modest factual showing" of the existence of a putative class of persons who are similarly situated to plaintiff. The faculty evaluation policy is evidence that all teaching faculty at NSU are subject to "a common policy or plan." See id. To the extent that Plaintiff alleges such policy violated the EPA, assuming the truth of such allegations, other male teaching faculty subject to such policy are similarly situated to Plaintiff because those faculty might also assert EPA claims against NSU based on that policy. Indeed, two of the affidavits submitted by Plaintiff are evidence that other male teaching

faculty at NSU besides Plaintiff claim that Defendants discriminated against them in violation of the EPA.

The evidence in the record of NSU's faculty evaluation process establishes a sufficient factual basis for the Court to conclude that Plaintiff has made a modest factual showing that NSU evaluates teaching faculty using the same criteria regardless of department, and that such evaluation process affects pay. In determining whether a plaintiff has made the "modest factual showing" necessary to support conditional certification of an EPA collective action, courts will consider evidence that a defendant applied the same compensation policy to the plaintiff as other members of the purported class. See Kassman, 2014 WL 3298884, at *6 (holding, in determining whether to conditionally certify an EPA collective action, that the plaintiff had made a "modest factual showing" warranting conditional certification based, in part, on "documentary evidence of [the defendant's] firm-wide compensation policies . . . .").[5] Here, there is documentary evidence that NSU has a faculty performance policy that establishes a common evaluation

---

[5] See also Moore v. Publicis Groupe, S.A., No. 11 Civ. 1279(ALC), 2012 WL 2574742, at *10-11 (S.D.N.Y. June 29, 2012) (unpublished) (conditionally certifying an EPA collective action when, among other evidence, the plaintiffs submitted evidence that members of the purported class were subject to the same compensation policies); cf. Choimbol, 475 F. Supp. 2d at 563 (indicating that Plaintiff must provide at least "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.").

scheme for all teaching faculty at NSU.  See Defs.' Opp'n Br. to Pl.'s Mot. for Conditional Class Certification Ex. A at 1.  Such policy indicates that "[a]ll teaching faculty are required to review and adhere to 6.1.1 Annual Review Process, 6.1.2 Criteria for Teaching Faculty Evaluation Categories, 6.1.3 Teaching Faculty Evaluation and Merit Performance and 6.1.4 Teaching Faculty Evaluation and Merit Pay Procedures . . . ."  Id. Moreover, the "Annual Review Process," to which "all teaching faculty are required to review and adhere," "consists of the evaluation of teaching faculty for 1) merit pay, 2) contract renewal, 3) promotion, 4) tenure, 5) change in contract time, and 6) post-tenure review."  Id.  Additionally, NSU evaluates faculty based on five common evaluation categories: teaching, research, professional development and service, university service, and community service.  Id. at 2.  In short, Exhibit A suggests that NSU has imposed, on all teaching faculty, a common "Annual Review Process," that NSU uses to determine the compensation for teaching faculty, using the same evaluation criteria for all teaching faculty.  Accordingly, considering Exhibit A as a whole, the Court finds that it is evidence that all teaching faculty at NSU are subject to a common evaluation process—the "Annual Review Process"—that affects their compensation.  To the extent that NSU applies a common compensation policy to all teaching faculty, even across

17

departments, that policy, coupled with Plaintiff's allegations that NSU's compensation policy violates the EPA by impermissibly discriminating against male faculty, see Pl.'s Br. Supp. Mot. for Conditional Class Certification at 4, suggests that Plaintiff has made a modest factual showing that all male teaching faculty at NSU during the previous three years are a class of persons who are similarly situated to Plaintiff because they might also have EPA claims predicated on such compensation policy. See, e.g., Kassman, 2014 WL 3298884, at *6.

Two of the affidavits that Plaintiff submitted to support his motion also indicate that Plaintiff has made the modest factual showing necessary for conditional certification of his EPA collective action. As evidence of the existence of a class of plaintiffs similarly situated to the named plaintiff, courts consider affidavits from other employees who assert that a defendant has violated their rights in the same manner as those of the named plaintiff. See Moore, 2012 WL 2574742, at *10-11; cf. Pollard v. GPM Invs., LLC, Action No. 3:10-cv-115, 2010 WL 4103199, at *3 (E.D. Va. Oct. 18, 2010) (unpublished) (holding that the plaintiffs had made a sufficient factual showing to grant conditional certification based on the plaintiffs' affidavits that other employees were similarly situated to the plaintiffs). In this case, Drs. Abatena and Agyei each aver that NSU violated the EPA by "paying me a lower salary than

certain female members of my department, school, or university"
"sometime" during a period that includes the three-year period
defining the Plaintiff's proposed class.   See Pl.'s Mot. for
Conditional Class Certification Exs. 4-5.   Although those two
affidavits present only skeletal, conclusory allegations against
NSU, they are sufficient, for the purposes of resolving this
motion, to demonstrate that two male members of NSU's teaching
faculty other than Plaintiff also claim that NSU violated the
EPA.[6]

   Importantly, the Court rejects Defendants' argument that
teaching faculty outside Plaintiff's department cannot be
similarly situated to him because NSU applies its evaluation
criteria differently across departments.   Defendants argue that
the Court should deny Plaintiff's motion because the differences
among NSU's departments render teaching faculty members outside
Plaintiff's department not similarly situated to him.   See
Defs.' Opp'n Br. to Pl.'s Mot. for Conditional Class
Certification at 3-4.   Although NSU uses common evaluation
criteria across teaching faculty, Defendants claim that NSU

_____

[6] Plaintiff also submitted an affidavit of Dr. Meshesha.  Pl.'s
Mot. for Conditional Class Certification Ex. 6.   However, Dr.
Meshesha's allegations that Defendants "discriminat[ed] against me by
violating the Federal EPA, by paying me a lower salary than certain
faculty members of other departments, schools, or universities . . ."
do not suggest that he is similarly situated to Plaintiff because
he has alleged a violation of the EPA based on discrepancies between his
pay and those of faculty members in "other departments, schools, or
universities," rather than at NSU.

applies such criteria differently to faculty within each department and, therefore, Defendants contend that faculty outside Plaintiff's department cannot be similarly situated to him. See id. Defendants correctly note that, to establish an EPA claim, Plaintiff cannot rely on a comparator in a different department at NSU where different departments require faculty members with different skills and responsibilities. See, e.g., Strag v. Bd. of Trustees, 55 F.3d 943, 950 (4th Cir. 1995); Soble v. Univ. of Md., 778 F.2d 164, 167 (4th Cir. 1985). However, it does not follow from that proposition that male teaching faculty in NSU's other departments are not similarly situated to Plaintiff. Rather, such male teaching faculty are similarly situated to Plaintiff to the extent that they claim that NSU, in violation of the EPA, has paid them less than female comparators within their departments, just as Plaintiff claims that NSU has violated the EPA by paying him less than female comparators within his department. Accordingly, even though NSU might apply its evaluation criteria differently across departments—thereby preventing Plaintiff or other putative collective action members from relying on comparators outside their departments—that fact does not alter the Court's conclusion that teaching faculty in departments different from Plaintiff's department can be similarly situated to him.

Therefore, the Court finds that through the affidavits of Drs. Abatena and Agyei, in conjunction with the evidence in Exhibit A of Defendants' brief in opposition that NSU applies a common compensation policy to all teaching faculty, Plaintiff has made a modest factual showing sufficient for the Court to reasonably determine that all male teaching faculty who worked at NSU during the past three years are similarly situated enough to Plaintiff for the Court to conditionally certify a collective action. See Houston, 591 F. Supp. 2d at 831. Accordingly, the court **GRANTS** Plaintiff's motion and will conditionally certify Plaintiff's proposed collective action.

## B. Notice to Potential Class Members

Next, the Court considers Plaintiff's request for an order "directing NSU to provide to Plaintiff, within fourteen days, a list in electronic form, with home addresses and contact information (including telephone numbers and email addresses) of all salaried male teaching faculty who were employed by NSU for some period of time during the last three years." Pl.'s Mot. for Conditional Class Certification at 2. In their brief in opposition to Plaintiff's motion, Defendants have not presented any argument why the Court should deny Plaintiff's request for notice.

As stated above, this Court has "discretion to facilitate notice to potential class members by allowing discovery of the

21

names and addresses of potential plaintiffs." Houston, 591 F. Supp. 2d at 832 (citations omitted). Given that Defendants have not contested Plaintiff's request for an order authorizing discovery of potential collective action members' contact information from Defendants, the Court concludes that the exercise of its discretion is appropriate in this case. However, the Court finds that neither requiring Defendants to provide Plaintiff with the telephone numbers and email addresses of potential class members, nor mandating that Defendants place notice "in conspicuous places on campus, including the NSU website," see Pl.'s Mot. for Conditional Certification at 2, is necessary to facilitate notice at this time.[7] See Houston, 591 F. Supp. 2d at 832 & n.8 (ordering the defendants to provide the plaintiff with the names and addresses of potential class members, but refusing to require the defendant to provide telephone numbers of such potential class members). Therefore, the Court **GRANTS IN PART** Plaintiff's request to the extent Plaintiff seeks an order requiring Defendants to provide Plaintiff's counsel with the names and addresses of putative collective action members and **DENIES IN PART** Plaintiff's request

---

[7] If notice mailed to putative collective action members is returned undeliverable as to any such members, Plaintiff's counsel may request from Defendants the phone numbers and email addresses of such members to allow Plaintiff's counsel to contact those individuals to obtain a current mailing address. See Houston, 591 F. Supp. 2d at 832 n.8; see also, e.g., Blount v. U.S. Sec. Assocs., 945 F. Supp. 2d 88, 97 (D.D.C. 2010).

to the extent he seeks an order requiring Defendants to provide Plaintiff with the email addresses and telephone numbers of putative collective action members and to post notice in conspicuous locations on the NSU campus, including NSU's website. To protect the privacy interests of potential collective action members, the Court will impose a protective order and require that Defendants produce putative collective action members' contact information to Plaintiff's counsel only and that Plaintiff's counsel only use such information in connection with this litigation. See, e.g., Russell v. Ill. Bell Tel. Co., 575 F. Supp. 2d 930, 939 (N.D. Ill. 2008) (citing Acevedo v. Ace Coffee Bar, Inc., 248 F.R.D. 550, 554 (N.D. Ill. 2008)).[8] Plaintiff's counsel shall not disclose the addresses of potential collective action members to Plaintiff.

The Court notes that Plaintiff attached to the instant motion a draft of a proposed notice to potential class members. However, in their brief, Defendants did not address the sufficiency of such proposed notice. The United States Supreme Court has stated that "[i]n exercising the discretionary

---

[8] The Court recognizes that directing Defendants to provide putative collective action members' contact information to Plaintiff's counsel could implicate such members' privacy interests. At this stage, the Court believes that limiting disclosure of putative collective action members' contact information only to Plaintiff's counsel, who is an officer of the Court with corresponding responsibilities to the Court, will sufficiently protect such members' privacy interests. However, if Defendants have any concerns regarding such privacy interests, they should inform the Court immediately.

authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." Hoffman-La Roche, 493 U.S. at 174. Accordingly, given the importance of the content of the notice to potential collective action members, the Court will provide Defendants with an opportunity to raise any objections to Plaintiff's proposed notice or to submit their own proposed notice to the Court within fourteen (14) days after the entry of this Opinion and Order. If Defendants do so, Plaintiff may file a reply to such submission within seven (7) days after Defendants' filing.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Conditional Class Certification and for an Order Authorizing Court Notice to Potential Class Members, ECF No. 38, is **GRANTED IN PART** and **DENIED IN PART**.

As to certification of a collective action pursuant to 29 U.S.C. § 216(b), Plaintiff's motion is **GRANTED** and the Court **CONDITIONALLY CERTIFIES** a collective action by the following class: All salaried male teaching faculty members who worked for Norfolk State University at any time since March 21, 2010.

As to Plaintiff's request for court-ordered discovery of potential collective action members, the Court **GRANTS IN PART**

and **DENIES IN PART** Plaintiff's motion. The Court **DENIES** Plaintiff's motion to the extent it seeks an order requiring Defendants to provide Plaintiff with the email addresses and telephone numbers of putative collective action members and to post notice in conspicuous locations on the NSU campus, including NSU's website. The Court **GRANTS** Plaintiff's motion to the extent he seeks an order requiring Defendants to provide his attorney with the names and addresses of putative collective action members. Defendants are **DIRECTED** to provide to Plaintiff's counsel, in a list in electronic format, the names and last known addresses of all potential members of the conditionally certified collective action within fourteen (14) days of the entry of this Opinion and Order. Further, the Court **DIRECTS** that such information only be disseminated among Plaintiff's counsel and **DIRECTS** that Plaintiff's counsel may use such information only in connection with this litigation.

The Court **PROVIDES** Defendants with leave to file objections to Plaintiff's proposed notice, ECF No. 38-7, or to propose their own form of notice, within fourteen (14) days after the entry of this Opinion and Order. The Court **PROVIDES** Plaintiff with leave to file a reply within seven (7) days after Defendants file any such objection or proposed notice.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

/s/ _____

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 18  , 2014